**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

**Civil Action No. 16-cv-00070-MSK-KMT**

**ANGELA COLLINS, individually and on behalf of others similarly situated,**

  **Plaintiff,**

**v.**

**DKL VENTURES, LLC, and**
**ERIC DAVID LEWIS,**

  **Defendant.**

_____

**OPINION AND ORDER SUSTAINING OBJECTIONS, DECLINING TO ADOPT RECOMMENDATION, AND DENYING MOTION TO DISMISS**

_____

**THIS MATTER** comes before the Court pursuant to Ms. Collins' Objections **(# 33)** to the Magistrate Judge's Recommendation **(# 32)** that the Defendants' Motion to Dismiss **(# 12)** be granted.[1]

The issue before this Court largely presents an issue of law, requiring little in the way of factual development.  It is sufficient to observe that, until September 2015, Ms. Collins was employed by the Defendants who did business as Select Home Care, as a provider of home-based companionship and medical assistance services for the elderly and infirm.  For purposes of this ruling, it is undisputed that Ms. Collins was not paid overtime rates by Select Home Care for those periods in which she exceeded 40 hours of work in a week.

Until approximately 2013, home care aides such as Ms. Collins were considered by the U.S. Department of Labor ("DOL") to be exempt from overtime rules.  However, in October

---

[1]    Although the Defendants have not yet filed a response to Ms. Collins' Objections, the Court is sufficiently advised of the issues to permit a ruling on the merits at this time.

1

2013, the DOL proposed to modify its regulations to expressly declare that health care aides were covered.  That regulation then became embroiled in extended litigation that was not conclusively resolved until late 2015.  The question presented here is whether, as a matter of law, the new regulation took effect before September 2015, when Ms. Collins ceased her employment with Select Home Care.

Ms. Collins commenced this action alleging violations of the Fair Labor Standards Act's overtime provisions, as well as similar provisions found in Colorado's wage and hour laws.  The Defendants moved to dismiss (# 12) Ms. Collins' claims under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, arguing that Ms. Collins lacked standing to sue because the regulation entitling her to overtime pay was not in effect during her conceded dates of employment.  This Court referred the matter to the Magistrate Judge, and in an August 16, 2016 Recommendation (# 32), the Magistrate Judge extensively addressed the applicable precedent and recommended that the Defendants' motion should be granted.  Ms. Collins filed timely Objections (# 33), arguing that the Recommendation misconstrued the applicable precedent and argued that appropriate construction of that precedent warranted a conclusion that the DOL regulation went into effect prior to September 2015. Pursuant to Fed. R. Civ. P. 72(b), the Court reviews Ms. Collins' Objections *de novo*.

The Court begins its analysis with the DOL's October 1, 2013 publication of its Final Rule governing home health aides.  78 Fed. Reg. 60454.  The rule stated that it would take effect on January 1, 2015.  *Id.* at 60455.  Before that effective date arrived, trade associations representing home health providers sued in the U.S. District Court for the District of Columbia, challenging the new regulation as an arbitrary and capricious exercise of DOL power.  *Home Care Assn. of America v. Weil*, 76 F.Supp.3d 138 (D.D.C. 2014).  On December 22, 2014, the

District Court found that the regulation was contrary to the statutory language and declared the regulation to be "vacated." *Id.* at 148. The DOL appealed that decision, and on August 21, 2015, the D.C. Circuit reversed the District Court and remanded the matter for entry of judgment in favor of the DOL. It is undisputed that the D.C. Circuit's Mandate issued on October 13, 2015.[2]

The Defendants argue that the District Court's *Weil* decision placed the new regulation in suspense, such that it did not take effect until the October 2015 Mandate from the Circuit Court removed any impediment to its operation. Ms. Collins argues that the Circuit Court's reversal of the District Court renders that court's earlier vacatur of the regulation a nullity, such that the regulation should be understood to have taken effect as scheduled on January 1, 2015. Thus, Ms. Collins argues, the regulation would apply to overtime hours she worked between January and September 2015.

The parties each rely heavily on a single, post-*Weil* District Court cases that addresses the question of the effective date of the reinstated regulation in their favor. On December 21, 2015, the Southern District of Ohio decided *Bangoy v. Total Homecare Solutions, LLC*, S.D.Oh. Case No. 15-cv-00473-SSB-SKB, Docket # 16 (slip op.). The court found that the employer "was entitled to rely on [the District Court's vacatur of the regulation in *Weil*] in not paying Plaintiffs

---

[2]     The Recommendation recites certain post-Mandate statements made by the DOL regarding when it would commence its own enforcement efforts under the newly-reinstated regulation. The Magistrate Judge did not rely upon the Department's own enforcement efforts in determining when the regulation took effect for purposes of private litigation, and this Court agrees that such post-Mandate statements are irrelevant. Moreover, the Court disagrees with the Defendants' premise that it is essential that the private right of action conferred by statute be necessarily circumscribed by those situations in which the DOL voluntarily decides to exercise "prosecutorial discretion" due to its own uncertainties about the regulation's effect. To the extent the DOL wished to ensure uniform enforcement, it was free to amend the regulation to create a new effective date post-*Weil*, but it did not do so.

overtime.  Any other conclusion would put [the Defendants] in an untenable position."  It found

that "when the district court vacated the rule before its effective date, it became a nullity and

unenforceable."  *Citing Natural Res. Def. Council v. U.S. E.P.A.*, 683 F.2d 752, 761-62 (3d Cir.

1982).  It noted that "permitting Plaintiffs to recover for a violation of the rule while the vacatur

was in effect would give the rule an impermissible retroactive effect."  Finally, noting that the

DOL itself had announced that it would not enforce alleged violations occurring prior to the *Weil*

Mandate, the *Bangoy* court noted that "good administration . . . require[s] that the standards of

public enforcements and those for determining private rights shall be at variance only when

justified by very good reasons."  *Quoting Skidmore v. Swift*, 323 U.S. 134, 139-40 (1944).

Ms. Collins relies upon *Kinkead v. Humana*, ___ F.Supp.3d ___, 2016 WL 3950737

(D.Conn. Jul. 16, 2016).[3]  In *Kinkead*, the court instead referred to "the well-established rule that

judicial decisions are presumptively retroactive in their effect and operation," explaining that

"[t]he ruling of the Supreme Court or of a federal court of appeal within its geographical

jurisdiction is the controlling interpretation of federal law and must be given full retroactive

effect in all cases still open on direct review and as to all events, regardless of whether such

events predate or postdate our announcement of the rule."  *Quoting Harper v. Virginia Dept. of*

*Taxation*, 509 U.S. 86, 97 (1993).  The court rejected the defendants' argument that they would

---

[3]    Although the Magistrate Judge did not cite it, Judge Arguello recently issued a decision
finding that "Plaintiffs have stated a viable claim for overtime for any work performed after
January 1, 2015, due to a new DOL regulation, recently upheld by the District of Columbia
Circuit Court of Appeals."  *Beltran v. Interexchange, Inc.*, ___ F.Supp.3d ___, 2016 WL
1253622 (D.Colo. Mar. 31, 2016).  This would seem to suggest that Judge Arguello considered
the DOL's regulation to have taken effect on January 1, 2015, notwithstanding the fact that the
regulation had been vacated by the District Court in *Weil* for nearly a year after that date.
However, it does not appear that the parties in *Beltran* raised the issue of whether the pendency
of the District Court's injunction in *Weil* affected the effective date of the regulation, nor that
Judge Arguello specifically considered that question.  Accordingly, *Beltran* does not add to the
analysis here.

be justified in having relied upon the District Court's vacatur of the regulation, explaining that reliance alone would not justify departing from the general rule of retroactive application, and further noted that any reliance would have been unjustified, in that "they were doubtlessly aware of a likelihood that the D.C. Circuit would do just what appellate courts often do – reverse the decision of a district court."  In finding "ample case law that compels retroactive application" of the Circuit Court's opinion, *Kinkead* rejected, without explanation, the defendant's reliance on *MCI Telecommunications Corp. v. GTW Northwest, Inc.*, 41 F.Supp.3d 1157 (D.Or. 1999).

The Magistrate Judge was particularly persuaded by *MCI Telecommunications*.  There, MCI and GTW were negotiating a contract at the same time that telecommunications regulations pertinent to that contract were under challenge in the Eight Circuit.  The Eighth Circuit had stayed some of the regulations from going into effect, and, eventually, vacated several of them, and MCI and GTW usually adjusted their negotiations or agreement to reflect the Eight Circuit's emerging decisions.  However, other aspects of the agreement remained in dispute, prompting litigation between those parties in Oregon.  While the Oregon case was pending, the U.S. Supreme Court reversed some of the Eighth Circuit's rulings, reinstating many of the regulations.  This prompted MCI to ask the Oregon court to overturn aspects of the agreement that were valid at the time the parties entered into them, but were no longer valid in light of the reinstated regulations.  As the Oregon court explained, "MCI essentially is asking this court to treat the stay, and the Eighth Circuit's subsequent order vacating the FCC regulations, as if those events had never occurred and the FCC regulations were continuously in effect."  *Id.* at 1163.

Rejecting MCI's request, the Oregon court explained that "[r]eversal of the orders [of the Eighth Circuit] on the merits does not negate the fact that they were valid, effective orders" at the time they were issued.  *Id.*  MCI's argument, it reasoned, would be colorable "if the orders issued

5

by the Eighth Circuit were void *ab initio*," but it observed that MCI was not contesting the Eighth Circuit's authority to issue the rulings when it did.  *Id.*  It observed that "[a] stay would be a hazardous procedural device if liability could be premised upon violating a rule while it had been vacated or stayed."  *Id.* at 1164.  It rejected the argument that Supreme Court precedent such as *Harper*, governing retroactivity of judicial rulings, applied, explaining that those retroactivity rules operate only when the judicial determination proceeds to apply the new rule to an affected litigant; in the circumstances that were presented, the court found that the Supreme Court "ruled upon an abstract facial challenge to the FCC's jurisdiction to promulgate these regulations, and did not apply any of those regulations to a specific [party]."  *Id.*

Finding no binding authority in the Tenth Circuit, the Court reads *Bangoy*, *Kinkead*, *MCI*, and the various authorities they rely upon together, and is left with the firm conclusion that there is no clear and unambiguous rule of law governing this situation.  Such lack of clarity leads courts down one of two mutually-exclusive paths.

The *Kinkead* path, and the authorities it relies upon, creates a sort of intellectual fiction, pretending that a rule of law announced by a superior appellate court is now and has <u>always</u> been the correct rule of law.  *See e.g. MCI*, 41 F.Supp.2d at 1162-63 ("the court is not creating new law but merely declaring what that law has always meant, even if this interpretation had not previously been acknowledged or conflicts with an earlier interpretation").  Although this approach has the benefit of being generally easy to apply, it produces seemingly inequitable results for those who structured their business decisions on the law as it previously had been interpreted rather being prescient enough to anticipate a change.

The alternative suggested by cases such as *Bangoy* and *MCI* is a pragmatic approach, recognizing and acknowledging that the law was understood to be something  at one time, may

be differently understood at a later time.  These cases attempt to give effect to both understandings – but at different points in time.  This approach has the untoward effect, however, of potentially creating disparate applications of the law among otherwise similarly-situated individuals.

Like the Magistrate Judge, this Court has an instinctively  favors the warts-and-all appeal of a pragmatic approach over an approach that is easy to implement but requires intellectual gymnastics to justify. It favors compliance with all laws as currently stated.  Unfortunately, however, this seems to be a minority view, and  it appears that the Supreme Court prefers the opposite.

The case of *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529 (1991), makes that point most cogently.  After an unrelated litigant succeeded in a constitutional challenge to a particular tax that many states levied, Beam brought a suit against its home state of Georgia, seeking a refund of taxes that it had paid under Georgia's version of the same tax.  Georgia's courts acknowledged that the tax was now unconstitutional, but refused to grant a refund on the grounds that, at the time Beam paid it, all parties understood the tax to be lawful and that the rule striking down the tax should be applied only prospectively.  The Supreme Court's decision rejecting Georgia's argument is noteworthy for its lengthy and careful discussion of the question of retroactivity.

It considered three alternatives.  First, it explained, "a decision may be made fully retroactive, applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of limitations." *Id.* at 535.  It noted that "this practice is overwhelmingly the norm." *Id.*  Second, it said, "there is the purely prospective method of overruling, under which a new rule is applied

7

neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision"; rather, "[t]he case is decided under the old law but becomes a vehicle for announcing the new, effective with respect to all conduct occurring after the date of that decision." *Id.* at 536.  The Court acknowledged that it has used this approach in the past, "albeit infrequently." *Id.*  Finally, there was the approach of "modified" or "selective prospectivity," in which the "court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." *Id.* at 537.  Each approach had its merits and drawbacks, the Court explained.  As to the "selective prospectivity" approach – the one seemingly urged by cases like *Bangoy* and *MCI* and the approach instinctively favored by this Court – the drawback was that it "breaches the principle that litigants in similar situations should be treated the same." *Id.*

*Beam* painstakingly acknowledged that a rule rejecting the selective prospectivity approach would produce certain untoward incentives, admitting that without it, "there is more potential for litigants to freeload on those without whose labor the new rule would never have come into being." *Id.* at 541.  It acknowledged that the very case before it was a clear example of such freeloading, as "the petitioner now before us . . . did not challenge the Georgia law until after its fellow liquor distributors had [already] won their battle" elsewhere. *Id.*  It struggled with the notion that "Beam had yet to enter the waters at the time of our decision in *Bacchus*, and yet we give it *Bacchus*' benefit," and considered the possibility that "it should not be applied to those who only exploit others' efforts by litigating in the new rule's wake" and that it could "limit retroactive application to those who at least tried to fight their own battles by litigating before victory was certain." *Id.* at 542-43.  But ultimately, the Court concluded that as to "putative

hangers-on, they are merely asserting a right that the Court has told them is theirs in law [and] that the Court has not deemed necessary to apply on a prospective basis only" and that "distinguishing between those with cases pending and those without would only serve to encourage the filing of replicative suits when this or any other appellate court created the possibility of a new rule by taking a case for review." *Id.*  And as to parties, such as the Defendants here, who may have "actually relied on the old rule and [ ] would suffer from retroactive application of the new," the Court offered little solace: "[i]t is simply in the nature of precedent, as a necessary component of any system that aspires to fairness and equality, that the substantive law will not shift and spring on" the particular equities of any given case. *Id.* at 543. Doing so would "only compound the challenge to the stabilizing purpose of precedent posed in the first instance by the very development of 'new' rules."[4]  *Id.*

Thus, *Beam* directly considers – and chooses to reject – the very arguments that would lead this Court to adopt the *Bangoy*/*MCI* approach here.  *Beam* makes it unambiguously clear that this Court cannot deem the D.C. Circuit's decision in *Weil* to operate retroactively in some respects, yet treat that decision as affecting the Defendants here only prospectively.  Moreover, although this Court might not necessarily have resolved the competing interests in the same way that *Beam* does, it is clear that *Beam* has done so and this Court is bound to follow that

---

[4]      *Beam* does suggest that issues of individual equity for parties affected by retroactive application of a new rule might be considered at the remedy phase in a given case. *Id.* at 543-44. This raises a fascinating issue in a case such as this, where Ms. Collins apparently intends to seek appointment as a representative of a class of similarly-situated employees. Ms. Collins' eligibility for overtime falls entirely within the time period that the DOL's regulation was subject to the District Court's decision in *Weil*, making her situation more suitable for the type of equitable adjustment contemplated in *Beam* than an employee whose claim to overtime compensation extends well beyond the Circuit Court's conclusive reinstatement of the DOL regulation.  As such, it may very well be that Ms. Collins susceptibility to unique remedial concerns might preclude her from being selected as an appropriate class representative.

resolution.  Thus, *Beam* suggests that this Court should treat the *Weil* decision as being fully

retroactive, such that the DOL regulation was properly promulgated and took effect as intended

on January 1, 2015.

There is, however, a final loose end from *Beam* that must be addressed.  *Beam* considered

three possible approaches to the question of retroactivity/prospectivity, and conclusively rejected

one of them, the selective prospectivity approach.  But it left room for the possibility of declaring

a new rule of law to be <u>fully</u> prospective in appropriate circumstances.  This avoids the evil of

the new rule applying to some parties but not others – the chief evil sought to be avoided by

rejecting the selective prospectivity approach.  Instead, under a fully prospective approach, the

DOL regulation was vacated by the District Court before it took effect, and the "new" rule of law

by the D.C. Circuit reinstating that regulation would be effective for <u>all</u> employees only after

August 21, 2015 (or, arguably, after October 13, 2015, when the Mandate from the Court of

Appeals issued).  *Beam* acknowledges that deeming a new rule of law to be fully prospective

may be appropriate in situations where applying the new rule to parties who relied upon the old

"would offend basic notions of justice and fairness."[5]  *Id.* at 536.  Although the issue of full

prospectivity was not particularly analyzed in *Beam*, the holding of that case indicates a type of

failsafe that, once triggered, would preclude full prospectivity: "<u>when the Court has applied a</u>

<u>rule of law to the litigants in one case</u>[,] it must do so with respect to all others."  *Id.* at 544

(emphasis added).  Once at least some parties are held to the new rule of law, the concerns of

---

[5]    The harm identified in *Beam* as the cost of allowing free use of full prospectivity is the
relatively ephemeral concern that " it tends to relax the force of precedent, by minimizing the
costs of overruling, and thereby allows the courts to act with a freedom comparable to that of
legislatures."  *Id.*

selective prospectivity discussed in *Beam* are implicated, and full retroactivity becomes the only option.

The Magistrate Judge addressed this issue squarely, finding that the D.C. Circuit's decision in *Weil* "did not apply the [new regulation] to a specific . . . employer." *Docket* # 32 at 14. Rather, the Magistrate Judge found (and the Defendants here have not challenged) that *Weil* was brought by "trade associations representing home care agency employers" and was "an abstract facial challenge to the DOL's authority to issue and implement" the regulation. *Id.* Thus, when the Circuit Court reversed the District Court and remanded that the regulation be reinstated, it did not hold any particular employer liable for overtime accruing between January 1, 2015 and August (or October) of that same year; it merely declared that "the regulation is valid," without further comment on the prospective or retroactive effect of that ruling. Thus, *Weil*'s failure to apply its "new rule" of law to any affected party does not, at least in theory, preclude this Court from finding that the rule should instead be given only fully prospective effect.

Nevertheless, for several reasons, this Court declines to declare that *Weil* has only prospective effect. First, and perhaps most significantly, the Defendants have not argued as much. The question of whether and under what circumstances a new rule of law should be given purely prospective effect is a complex and difficult one, informed by intricate rules and interlocking precedents, and the Defendants' motion briefing does not the guide the Court down such a path. Rather, the Defendants' motion is predicated almost entirely on the decision in *Bangoy*, which itself elides any thorough precedential analysis on the question of prospectivity. Second, although *Weil* did not purport to apply its new rule of law to any parties, it is clear that other courts, such as *Kinkead* have since done so. Although not strictly within the terms of the

11

failsafe described in *Beam*, the fact that other courts have begun holding employers responsible for overtime as of January 1, 2015 raises the specter of selective prospectivity that *Beam* clearly rejects. Third, even if this Court were to embark on a prospectivity analysis of its own accord, it would conclude that the reliance interests urged by the Defendants here are not so compelling as to warrant the unusual step of declaring a new rule of law to have only prospective effect. Typically, fully prospective application requires, at a minimum, that the new rule of law is "unanticipated" or "an issue of first impression whose resolution was not clearly foreshadowed." *U.S. v. Johnson*, 457 U.S. 537, 550 (1982); *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106 (1971). Here, the Court cannot find that the D.C. Circuit's conclusion that the DOL had promulgated the rule consonant with the powers delegated to it by Congress was so unanticipated or unexpected that the Defendants can claim to have been blindsided by it. In that regard, this Court agrees with *Kinkead*'s observation that employers bouyed by the District Court's vacatur of the regulation in *Weil* should nevertheless have anticipated at least the reasonable possibility that the Circuit Court would disagree and reverse.

Accordingly, although the Court appreciates the Magistrate Judge's thoughtful consideration of a difficult issue of law supported by inconsistent precedent, this Court ultimately disagrees. Rather, this Court finds that the D.C. Circuit's decision in *Weil* must be given retroactive effect, such that the DOL's regulation is deemed to have taken effect on January 1, 2015 as stated.

In such circumstances, the Court **SUSTAINS** Ms. Collins' Objections **(# 33)**, **DECLINES TO ADOPT** the Recommendation **(# 32)**, and **DENIES** the Defendants' Motion to Dismiss **(# 12).**

Dated this 21st day of September, 2016.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

13