**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-00070-MSK-KMT
_____

ANGELA COLLINS,

      Plaintiff,

v.

DKL VENTURES, LLC, d/b/a SELECT
HOME CARE, and ERIC DAVID LEWIS,

      Defendants.
_____

**AMENDED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**
_____

      Plaintiff, Angela Collins, and Defendants, DKL Ventures, LLC and Eric David Lewis, by and through their respective counsel, submit the following Amended Joint Motion for Preliminary Approval of Class Action Settlement:

### Compliance With D.C.COLO.LCivR 7.1(a)

      Pursuant to Local Rule 7.1(a), Plaintiff's counsel has consulted with Defendants' counsel, and is authorized to state that this motion is being jointly made by the parties.

### I.      PRELIMINARY STATEMENT

      On May 26, 2017, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Plaintiff Classes (ECF No. 60), which the Court denied on July 19, 2017 (ECF No. 61).  The Court disapproved of the parties' effort to settle both FLSA collective action claims at the same time as Rule 23 state law class action claims.  In its order, the Court advised that "so long as Ms. Collins intends to pursue her FLSA

1

claims as a collective action, there can be no settlement of FLSA claims until opt-in notices are collected," and further noted in footnote 2 that "Ms. Collins is, of course, free to settle her own FLSA claim now and abandon any effort to proceed collectively on that claim" (ECF No. 61, p. 4).

In light of the Court's decision the parties have agreed to settle Ms. Collins' FLSA claim on an individual basis, with Ms. Collins abandoning her efforts to proceed collectively on her FLSA claim.  Accordingly, the parties have agreed to remove the previously-defined "FLSA Class" from their settlement, and have stipulated to a modified, single class of plaintiffs under the Colorado Wage Claim Act ("CWCA") and Rule 23 of the Federal Rules of Civil Procedure consisting of Defendants' current and former hourly employees who worked overtime hours during the time period from January 1, 2013 to December 31, 2015 and who were not paid overtime wages for those hours.[1]  The parties have amended their settlement agreement to reflect these changes, and now jointly seek the Court's approval of their Amended Settlement Agreement of Class Action Claims, attached hereto as **Exhibit 1**.

## II.    **INTRODUCTION**

Plaintiff Angela Collins ("Named Plaintiff" or "Plaintiff") seeks preliminary approval of the Amended Settlement Agreement of Class Action Claims ("Settlement") she reached on behalf of herself and all similarly situated  hourly home health care workers employed by

---

[1] Under the parties' original proffered settlement agreement, the parties proposed a Rule 23 class consisting of employees who worked from January 1, 2013 to December 31, 2014, and a second "FLSA Class" consisting of employees who worked from January 1, 2015 to December 31, 2015.  By extending the Rule 23 class period to December 31, 2015 under their Amended Settlement Agreement, the parties are able to preserve the same general framework of their settlement and ensure that the all of the same potential class members are included in the settlement for the previously negotiated settlement amount, subject to the Court's approval.

Defendant DKL Ventures, LLC, for the period of January 1, 2013, through December 31, 2015 (the "Class Members"). Plaintiff alleges that Class Members were denied overtime and off-the-clock compensation when Defendants allegedly failed to pay overtime for all work performed and failed to pay at the overtime premium rate as opposed to the regular rate of pay when Class Members were entitled to such overtime premium rate. Defendants deny these allegations and all claims pled.

Named Plaintiff has entered into a proposed Settlement with Defendants on behalf of herself and the Class Members. A copy of the Settlement is attached as **Exhibit 1**. The Settlement provides for a $200,000 total settlement amount in return for a release and dismissal with prejudice of the claims against Defendants, and which could have been pled based on the facts alleged in this action. The Settlement Amount (net of attorney's fees and costs) will be distributed to all Class Members who worked unpaid overtime hours during the Class period and who do not exclude themselves from the Settlement. Class Members' payments will be calculated by examining the pay, payroll, and distribution records of Defendants, and calculating the proposed individual distributions to each of the Plaintiff Class Members utilizing and applying a pro rata distribution to each in consideration of the number of hours worked during each payroll period included during the above stated time period, and also considering the amount and percentage that their compensation was reduced by Defendants based on the relative number of hours they worked during the relevant work weeks.

Named Plaintiff and her counsel, as well as Defendants and their counsel, believe the Settlement—negotiated at arm's length after mediation and exchange of discovery—is a fair and

reasonable resolution of the alleged claims and accordingly request that the Court preliminarily approve it.

### III.    SUMMARY OF LITIGATION

**A.    Facts**

Defendants are Colorado residents. DKL Ventures, LLC, d/b/a Select Home Care ("DKL") is a Colorado for-profit corporation.  Its president is Eric David Lewis ("Lewis"). Defendants employed the Class Members to provide labor and services connected with the operation of DKL's home health care service within the state of Colorado.

Named Plaintiff has alleged that she and the members of the Plaintiff Class were hourly, non-exempt employees covered by the FLSA, the Colorado Minimum Wage Order, and the Colorado Wage Claim Act, and other pertinent Colorado wage-and-hour laws and regulations. Named Plaintiff also alleged that she and the members of the Plaintiff Class were employed within the state of Colorado by DKL and that Lewis was personally liable under the FLSA for having approved and implemented the wrongful pay policies and practice alleged in the complaint.  Further, the Plaintiff alleged that she and the members of the Plaintiff Class were not properly paid for all of their work, and were not paid at the lawful rate for such work.

Defendants have generally denied Plaintiff's allegations, and asserted, among other defenses, that Plaintiff and the members of the Plaintiff Class were properly paid for all time and that no compensable legal claims exist for the remedies sought by Plaintiff for herself and/or for the Plaintiff Class.  Defendants deny that Plaintiff and the members of the Plaintiff Class were paid other than as required by law.

**B.    Procedure**

1.      On January 12, 2016, Plaintiff filed an alleged class action lawsuit against Defendant entitled *Collins v. DKL Ventures, LLC*, Number 2016-cv-000707-MSK-KMT.  (ECF No. 1) (the "Action").  On March 1, 2016, Defendants filed their Motion to Dismiss.  (ECF  No. 12).  On March 4, 2016, the Court entered its Order (ECF  No. 24) granting the Amended Unopposed Motion to Equitably Toll the Statute of Limitations for Plaintiffs' Claims under the Fair Labor Standards Act.  On September 21, 2016, the Court denied Defendants' Motion to Dismiss.  (ECF No. 38).  On October 3, 2016, Defendants moved for reconsideration (ECF No. 39).  On October 5, 2016 Defendants filed their Answer.  (ECF No. 40). On April 11, 2017, Defendants filed a Notice of Settlement, (ECF No. 54).  On May 15, 2017, the parties filed a stipulated motion to lift stay and cease the tolling of the FLSA statute of limitations (ECF No. 57), which the Court granted on May 16, 2017 (ECF No. 59).  On May 26, 2017, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement and Conditional Certification of Plaintiff Classes (ECF No. 60), which the Court denied on July 19, 2017 (ECF No. 61).

2.      Plaintiff in the Action alleged that Defendants violated the FLSA, the Colorado Wage Act, and all applicable Colorado Minimum Wage Orders.  Plaintiff asserts that Defendants allegedly (a) failed to pay the members of the Plaintiff Class at their overtime premium rate when the laws so required; and, (b) failed to provide compensation for breaks.  In the Action, Plaintiff alleged purported class and collective action claims for relief on behalf of present and former employees.  Defendants denied, and continue to deny, each and every material allegation made by Plaintiff.

3.      On December 28, 2016, the Court referred this matter to Magistrate Judge Kathleen M. Tafoya to conduct an Early Neutral Evaluation ("ENE").  That ENE was held on January 24, 2017 and while the parties did not enter into a settlement agreement at that time, they exchanged discovery documents and moved substantially towards resolution of the Action. Settlement was reached on April 11, 2017, after the exchange of additional discovery.

4.      Plaintiff, on behalf of herself and the Plaintiff Class that she purports to represent, along with the Defendants now desire to settle and completely resolve all rights, claims, causes of action, and proceedings and avoid claims of further litigation by Plaintiff and Plaintiff Class members against Defendants and their past, present, and future officers and directors (in their corporate and individual capacities), and employees, and the predecessors, heirs, successors, trustees, administrators, and assigns of each of the foregoing, as to all claims which were pled and all claims arising out of the facts alleged in the Complaint encompassing claims based on the FLSA, the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101, *et seq.*, and all applicable Colorado Minimum Wage Orders, 7 C.C.R. § 1103-1.

5.      The Plaintiff and her counsel have fully analyzed and evaluated the Plaintiff Class's respective claims and contentions, Defendants' defenses, and this Settlement as it affects the named Plaintiff and the members of the Plaintiff Class.  To determine the value of each Plaintiff's and each potential class member's claims, Plaintiff and her counsel reviewed many hundreds of pages of documents collected in discovery, including but not limited to, pay records; spreadsheets used to calculate employee pay; policies with respect to compensation, and performed many hours of analysis of those records kept by Defendants.  Plaintiff and her counsel, after taking into account the foregoing and the substantial risks of litigation, and

especially the financial condition of the Defendants, are satisfied that the terms of this Settlement are a fair, reasonable, adequate, equitable, and complete settlement and resolution of all claims that were pleaded or that could have been pleaded in the Action arising out of the facts alleged in the Action; that Plaintiff does not seek any injunctive or other relief beyond the Settlement Payment described below; and that a settlement of the Action on the terms set forth below is in the best interest of the alleged Plaintiff Class.

6.      Defendants, while continuing to deny any and all allegations of wrongdoing and disclaiming any and all liability with respect to any and all claims made against it in the Action, and contending that its pay practices were and are lawful and proper, consider it desirable to resolve the Action on the terms stated herein in order to avoid further expense, inconvenience, and interference with its ongoing business operations and to dispose of potentially burdensome litigation, and thus has determined that settlement of the Action is in their best interests.

7.      The Settlement reflects a compromise between the Parties and shall in no event (other than if there is a default by any of the Parties in satisfying the terms of the Settlement) be construed as or be deemed an admission or concession by any party of the truth or the validity of any substantive or procedural allegation, claim, or defense asserted in the Action or in any other action or proceeding or of any fault, negligence, or breach of any alleged duty on the part of any party, and all such allegations are expressly denied.  The Settlement is made without admission or waiver of any substantive or procedural fact, claim, or defense by any party, and shall not be used in evidence in any judicial or administrative proceeding, except to enforce the terms hereof (other than if there is a default by Defendant(s) in satisfying the terms of the Settlement).

As a result of the of the negotiations of the parties after the exchange of discovery and acknowledgment by Defendants of the existence of and certification for settlement purposes of the Plaintiff Class contained herein, the Parties have reached a settlement of the class and individual claims, subject to the Court's approval.

## IV.   TERMS OF THE PROPOSED SETTLEMENT

### A.   Settlement of Ms. Collins' FLSA Claim on an Individual Basis

Subject to the Court's final approval of the Settlement, the Named Plaintiff, Angela Collins, agrees to abandon any effort to proceed collectively on her FLSA claim, and the parties agree to settle Ms. Collins' FLSA claim on an individual basis.  Defendants agree to pay Ms. Collins Eight Thousand Dollars ($8,000.00) as a settlement of Ms. Collins' individual FLSA claim.  This settlement amount is fair and reasonable.  If Defendants were legally required to pay overtime wages to Ms. Collins (which Defendants dispute based on various legal defenses outlined in Section V below and in Defendants' Motion to Dismiss), Ms. Collins would have been entitled to overtime pay totaling just over $9,000.00 during the time period from January 1, 2013 to December 31, 2015—not including liquidated damages.  Thus, the Court should approve Ms. Collins' settlement of her FLSA claims on an individual basis as fair and reasonable.

### B.   The Plaintiff Class under the CWCA

The proposed Plaintiff Class is comprised of all current or former hourly employees of Defendants who worked more than 12 hours in a day or more than 40 hours in a week during the time period from January 1, 2013 to December 31, 2015 and who were not paid overtime wages for those hours.

### C.   Relief to The Plaintiff Class

Pursuant to the Settlement, the terms of which are incorporated herein by this reference, Defendants will pay a total settlement amount of $200,000.00, which includes all attorney's fees, costs, administration expenses, the $8,000.00 payment to Ms. Collins as consideration for settlement of her FLSA claim, and pro rata damages to all class members, all subject to Court approval.   The $200,000.00 settlement amount (net of attorney's fees, costs, administration expenses, and Ms. Collins' FLSA settlement payment) will be distributed to the Class Members pursuant to the terms of the Settlement attached hereto.   Any such Net Settlement Amount unable to be distributed to the members of the Plaintiff Class shall be paid as set out in the Settlement.

### D.      Settlement Notice and Exclusion Procedure

1.      Within 14 calendar days after the Court's preliminary approval of the Settlement Agreement, Defendants shall pay the total $200,000 settlement amount to the Settlement Administrator in escrow. Settlement at ¶ 7.

2.      Within the time limits set out in the Settlement, Defendants will provide the Settlement Administrator and Plaintiff's counsel with the data, materials and documents described in the Settlement.  The Settlement Administrator will then timely mail or otherwise provide to Class Members, as set out in the Settlement, the documents and notices as described therein.  *See* Exhibit B to the Settlement Agreement (Class Notice).

3.      The Class Members may request to be excluded from the Settlement.  To be valid such exclusion must be received by the Settlement Administrator within 60 days after the date such documents are transmitted to the Class Members. *See* Settlement at ¶ 8(c).

4.      Sixty-seven (67) calendar days after transmittal of the Class Notice, the Settlement Administrator will provide the Defendants' and Plaintiff's counsel with a complete list of all Class Members who timely and properly excluded themselves from the Settlement. Within 14 days of the Court's final approval of the Settlement, the Settlement Administrator shall refund to Defendants that part of the escrowed $200,000.00 settlement amount that reverts to Defendants based on the exclusion(s). *See* Settlement at ¶ 8(d).

5.      If five percent (5%) or more of the Class members or a number of the Class members whose settlement shares total five percent (5%) or more of the Class Fund (as described in the Settlement) exclude themselves from this Settlement, then Defendants at their sole option may withdraw from the Settlement, in which event the Settlement will be entirely void and all amounts paid by Defendants to the Settlement Administrator will be returned to Defendants forthwith and the Court notified of the event and status of the settlement process. Settlement at ¶ 9.

6.      Members of the Class who have not excluded themselves from the settlement shall be given notice of the final approval hearing and the pre-tax amount that they are anticipated to receive.  Settlement proceeds will be paid ½ as back wages from which taxes will be withheld and for which a W-2 IRS form will be issued by Defendant(s), and ½ as penalties for which an IRS form 1099 will be issued by Defendant(s).  Settlement at ¶ 12.

7.      Within 7 days of entry of the Final Approval Order, the Settlement Administrator will notify the Defendants of any taxes and contributions owing on the portion of the settlement payments allocated as back wages subject to payroll taxes, and within 14 days from the entry of the Final Approval Order, the Defendants shall tender to the Settlement Administrator any

additional amounts needed to cover all required employer payroll taxes and contributions with respect to payment of back wages. *Id.*

8.      On the same day that the Settlement Administrator issues settlement checks to members of the Class, the Settlement Administrator shall disburse the $60,000.00 attorney's fee amount to Plaintiff's counsel, if and as approved by the Court, and the $12,000.00 in costs to Plaintiff's counsel and/or to the settlement Administrator as appropriate, if and as approved by the Court. *Id.*

9.      If any settlement checks are not timely cashed within 60 calendar days of issuance, all unclaimed funds will revert to Defendants, who shall then promptly pay the unclaimed funds to the Colorado non-profit organization selected by the Court under the Settlement (the parties have approved the Colorado non-profit organizations as follows as the recipients of such funds: the Colorado Fiscal Institute and the Colorado Center on Law and Policy). *Id.* at ¶ 12(c).

### E.      <u>Attorney's Fees, Costs, And Settlement Administration</u>

10.      Subject to the Court's approval, the Settlement provides that the following amounts will be taken and/or reserved from the total settlement amount of $200,000.00: (1) $8,000.00 to the Named Plaintiff as consideration for settlement of her FLSA claims on an individual basis; (2) $120,000.00 for the Class Fund; (3) $60,000.00 for Plaintiff's separately negotiated attorney's fees; and (4) $12,000.00 for litigation costs and expenses, including those for the costs of the Settlement Administrator. This total amount does not include the employer's share of payroll taxes or contributions resulting from this settlement. *Id.* at ¶ 5.

11.     Subject to the Court's preliminary approval, Jennifer Spradlin of the Sawaya Law Firm (1600 Ogden Street, Denver, CO 80218, 303-839-1650 ext. 1035) will act as the Settlement Administrator.  All fees and costs of the settlement administrator shall be paid by Defendants from the total settlement amount and are included in the $12,000.00 cost and expenses figure set forth above.

Ms. Spradlin is the legal assistant and office administrator at the firm of Sawaya & Miller.  She is additionally a first year law student at the University of Denver College of Law. Undersigned counsel has worked with Ms. Spradlin on multiple class action settlements in the past and highly regards her demonstrated performance in the administration and processing of counsel's wage and hour settlements over the last 5 years.  In this case Ms. Spradlin has already examined the discovery materials including the payroll data supplied by defendants. Accordingly, Ms. Spradlin already has significant information about the structure and make-up of the proposed plaintiff class and the payroll records that will form the basis of the class administration.  Further, in cases with larger classes than involved in this case, undersigned counsel on multiple occasions has used the most cost-effective class administration provider that he has been able locate.  That firm operates under the name of the CPT Group and has been approved by the Colorado federal district court numerous times to serve in the roll of class action administrator.  *See, e.g. Lozoya v. All Phase Landscape Construction, Inc.* No. 12-cv-01048-JLK-KLM, (D. Colo. Feb. 17, 2016), Doc. 135 at 4, Order Approving Settlement, Certifying Settlement Class, Appointing Settlement Class Counsel, Directing Notice and Staying Proceedings Against Defendants.  In this case undersigned counsel requested CPT Group to submit a proposal for provision of class action settlement administrative duties in this case. CPT

submitted a proposal at their lowest and discounted rate of $17,000.00 (reduced from their normal fee for such services of over $20,741.82.  *See* **Exhibit 2** attached hereto.  Because the net settlement in this case is under $200,000.00 payable to settlement class members counsel's belief is that the charging of over 10% of that amount for administrative services would be burdensome to members of the plaintiff class and so Ms. Spradlin was asked to submit a proposal to perform all of the procedures laid out in above referenced **Exhibit 2** and (including expenditures for all notice and delivery services and bookkeeping services) she was able to submit a proposal for doing the same work for a total of $12,000.00 which is more than 25% less than that offered by CPT (and which includes the $400.00 in litigation expenses referenced above).  Accordingly, as a cost saving practice working to the benefit of the plaintiff class undersigned counsel believes that the appointment of Ms. Spradlin to perform the services of class administrator is beneficial to the proposed settlement class as well as the parties.

## V.        THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

The review and approval of a class action settlement is undertaken in three steps: (1) preliminary approval of the proposed settlement after submission of a written motion for preliminary approval, the proposed class settlement, and the proposed class notice; (2) dissemination of mailed notice of the settlement to all affected settlement class members; and (3) a formal fairness hearing or final settlement approval hearing, at which time class members may be heard regarding the settlement, and at which time evidence and argument concerning the fairness, adequacy and reasonableness of the settlement may be presented.  *Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016) (citing Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004)).

The object of preliminary approval is for the Court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness. *Id.* at 128. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase. *Id.*; *see also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) ("The purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing").

Courts often consider the following factors in deciding whether to give preliminary approval to the settlement: (1) whether the proposed settlement was fairly and honestly negotiated; (2) the judgment of the parties that the settlement is fair and reasonable; (3) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; and (4) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. *Pliego*, 313 F.R.D. at 128 (citing *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)). All four factors are satisfied here.

### A.      The Proposed Settlement was Fairly and Honestly Negotiated

The proposed Settlement was negotiated in an arm's length transaction between the parties, after exchange of significant information and data, and after an Early Neutral Evaluation conducted by Magistrate Judge Tafoya.

Prior to and during the course of settlement negotiations, the Parties engaged in discovery and exchanged certain Class Member information and potential damages data. Additionally, Plaintiff's counsel and his staff spent many hours reviewing many large amounts of payroll and

employee payment data concerning the 215 Class members related to the underlying questions raised in this case and the settlement-related data.   This exchange of information revealed, among other things, bona fide disputes as well as a method of ascertaining and calculating potential damages.

In calculating potential damages were the case to go on to trial, Plaintiff's counsel has examined the actual physical pay stubs of the Named Plaintiff for every pay period of employment.   Additionally, Plaintiff's counsel has reviewed representative schedules and payroll information as well as payroll distribution data for the Plaintiff Class.   When Plaintiff takes into account the potential risk of non-recovery should Defendants either prevail on its defense(s) or become financially unable to provide compensation, Plaintiff's counsel has concluded that the proposed Settlement represents more than a fair and reasonable resolution for the members of the Plaintiff Class.

The Settlement is the result of intensive, arm's-length negotiations lasting for many months and involving experienced counsel who are well-versed in employment law, class action litigation procedures, and the legal and factual issues of this case.   Accordingly, the Settlement is fairly and honestly negotiated.   *See Lucken Family L.P., LLLP v. Ultra Res., Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 2650037, at *3 (D. Colo. June 30, 2010) (settlement fairly and honestly negotiated where the "parties entered into the agreement only after engaging in a meaningful exchange of information, and with full knowledge of the critical factual and legal issues," including the input and assistance of a respected and qualified mediator).

    **B.**    <u>**The Parties' Competent and Experienced Counsel Agree that the Settlement is Fair and Reasonable**</u>

The parties were represented by competent and experienced counsel.  Plaintiffs' counsel, David H. Miller, has substantial experience in representing class actions in wage and hour disputes at not only the local, but also the regional and national level.  Further, Plaintiff's counsel has been involved in Colorado state and federal courts in class action litigation for over 30 years of continuous practice and has also defended against numerous wage and hour class actions, nationwide, while he served as Associate General Counsel to a Fortune 100 Colorado-based corporation from 2005 to 2011.  Within the last year Plaintiff's counsel has been recognized as meeting the adequacy-of-representation requirements in multiple FLSA and state hybrid wage and hour class actions in this district and has been appointed as plaintiffs' class counsel.  *See, e.g., Lozoya v. All Phase Construction,* No. 12-cv-01048-JLK-KLM, (D. Colo. Feb. 1, 2016), Order Approving Settlement Certifying Settlement Class, Appointing Settlement Class Counsel, Directing Notice and Staying Proceedings against Defendants, ECF No. 135 at 3 (¶ 2(a)); *Dominguez v. Wilson Roofing Div.,* No. 16-cv-00177-JLK-MEH, (D. Colo. Sept. 9, 2016), Order on Amended Joint Motion for Preliminary Approval of Class Action Settlement and Certification of Plaintiff Class, ECF No. 28 at 2 (¶ 2).

Defendants' lead counsel, Dana L. Eismeier, has nearly 30 years' experience in complex commercial and employment litigation in both federal and state courts.  Mr. Eismeier and his associate, Erik K. Schuessler, have substantial experience in defending hybrid wage and hour class/collective actions such as this, including four such cases in the past year.

Named Plaintiff and her counsel agreed to the Settlement only after engaging in extensive negotiations and discovery, as well as considering the thoughtful comments of the Magistrate Judge at the Early Neutral Evaluation.  Plaintiff's counsel believes this Settlement is a fair and

reasonable resolution of Plaintiff's claims, as it provides reasonable compensation to Plaintiff Class members in light of the significant risks of continued litigation, including Defendants' multiple factual and legal defenses (outlined below).   Defendants' counsel agrees that the Settlement is fair and reasonable, and that the Settlement should be preliminarily approved. Counsels' judgment regarding the fairness of a class settlement is "entitled to considerable weight."   *Lucas*, 234 F.R.D. at 695 (finding settlement fair and reasonable based on the unanimous support of the parties' counsel, who had substantial experience in complex class action litigation).

### C.      Serious Questions of Law and Fact Exist, Placing the Outcome of the Litigation in Doubt

This inquiry requires the Court to determine whether the parties could reasonably conclude that serious questions of law and fact exist that could significantly impact the case if it were litigated; this does not, however, require the Court to evaluate the actual merits of the case. *Lucas*, 234 F.R.D. at 693-94.

As set forth in more detail in Section III above, this lawsuit involved over a year of active litigation involving highly contested legal and factual issues, including the retroactive application of the FLSA's "Home Care Regulation" (29 C.F.R. § 552.109), the applicability of Colorado's "Companionship Services Exemption" (7 Colo. Code Regs. § 1103-1:5) to companionship employers such as Defendants, Defendants' reliance on interpretive policy statements from the federal Department of Labor and the Colorado Division of Labor, the applicability and calculation of statutory penalties under the Colorado Wage Claim Act, the length of the applicable statutes of limitations, and whether Defendants properly paid their employees for rest and meal breaks.

The Plaintiffs have concluded that the likelihood of obtaining a meaningful remedy after the time and expense of litigation would potentially result in a lower recovery for the Class Members and might result in only a Pyrrhic victory with no substantial real world benefit to the Class Members.  The underlying state law issue (coverage under the applicable Colorado Minimum Wage Order) has not yet been decided by any Colorado appellate court, and the retroactivity of the FLSA award is an issue not finally decided by this court.  The issue is still in dispute and the subject of hard-fought litigation in courts around the country.  *See* briefing on Defendants' Motion to Dismiss.  Thus, serious questions of law and fact exist that place the outcome of the litigation in doubt.

### D.  The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief after Protracted and Expensive Litigation

"[A] cash settlement amounting to only a fraction of the potential recovery does not *per se* render the settlement inadequate or unfair.  Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment."  *Villegas v. J.P. Morgan Chase & Co.*, CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (internal quotations omitted) (analyzing under Fed. R. Civ. P. 23).  Here, the proposed Settlement involves fair and reasonable payments in light of the risks of further litigation in a setting where the dispositive legal issues have not been resolved by appellate courts and remain uncertain, and where recovery on behalf of the Class Members remains seriously in question.

Under the terms of the proposed Settlement, Defendants will ultimately pay into a settlement pool a total settlement amount of $200,000.00 (plus tax contributions).  The Defendants have agreed that Plaintiff's counsel may request no more than $60,000.00 in fees and $12,000.00 in costs and class administration fees—all subject to the Court's approval—leaving a

sum of $120,000.00 to be allocated to the members of the Plaintiff Class, plus an $8,000.00 settlement payment to the named Plaintiff to settle her FLSA claim on an individual basis.

Plaintiff acknowledges that the uncertainty and complexity of both the case claims and the diminished likelihood of being able to collect any substantial recovery for members of the Plaintiff Classes has resulted in counsel's conclusion that the proposed Settlement is fair and reasonable to the Class Members.

### E.      The Request for Attorney's Fees Is Reasonable

Plaintiff's counsel's request for fees is reasonable.  Plaintiff's counsel has agreed to limit the request for attorney's fees to at or under $60,000.00.  That number is reasonable given that Plaintiff has agreed to oversee the administration and distribution of the Settlement along with a Class Administrator who is paid as a member of Plaintiff's counsel's staff, as approved by the Court.

In *Lucken*, the Court cited *Cimarron Pipeline Constr., Inc. v. Nat. Council on Comp.*, 89-822-T, CIV-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) for the proposition that attorneys' fees "'in the range of 30-40 [percent]' of any amount recovered are common in class action cases taken on a contingent fee basis . . . and attorneys' fees of 33 1/3% of the common fund [are] consistent with the prevailing case law in this circuit." 2010 WL 5387559, at *5. Plaintiff's fee request here will be well within the 30-40% range identified in *Cimarron*.

To date plaintiff's counsel has incurred hourly fees totaling over $87,000 and paid expenses of litigation in the amount of $400.00.[2] *See* "Detail Work-in-Process" Report attached as **Exhibit 3** from counsel's Time And Billing System of contemporaneously recorded attorney business records.  Plaintiff's lead counsel has recently received approval by the federal District Court of Colorado in another recent FLSA and state class action wage and hour claim of rates consistent with those requested here, and as supported by expert affidavit, declaration of counsel and the most current report of Colorado attorney billing standards, all of which will be submitted to the Court no later than 7 days before the Final Approval Hearing for the within Settlement Agreement.[3]

## VI.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PLAINTIFF CLASS

Where, as here, the parties have reached an agreement to settle before the class has been certified by the court, the court may conditionally certify the proposed class for settlement purposes only.  *Pliego*, 313 F.R.D. at 125 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

For settlement purposes only, the parties move for conditional certification under Rule 23 of the Federal Rules of Civil Procedure of a class of plaintiffs consisting of all current or former hourly employees of Defendants who worked more than 12 hours in a day or more than 40 hours

---

[2]   Additionally, plaintiff's counsel has not included and does not intent to seek in the billing statement(s) approximately $1,800 in charges for computerized legal research and copying and delivery costs associated with the preparation of briefs, motions and other filings and discovery in this case.

[3]   In the case of *Dominguez v. Wilson Roofing Division LLC,* No. 16-cv-00177 (D. Colo Feb. 13, 2017), Doc. 36, undersigned plaintiff's counsel filed his verified motion for attorney's fees and costs requesting the court's approval of his same hourly rate as that requested in this proceeding. On February 23, 2017, by Minute Order, Doc. 38, the Colorado federal district court approved that requested rate at the Final Approval Hearing of that class action.

in a week during the time period from January 1, 2013 to December 31, 2015 and who were not paid overtime wages for those hours.

A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but the other requirements for certification must still be satisfied. *Pliego*, 313 F.R.D. at 125 (citing *Amchem*, 521 U.S. at 620). Thus, any request for preliminary approval of a class settlement should address why certification would be appropriate under Rule 23, albeit within the context of a settlement. *Id.* For purposes of settlement, each of the requisites for class certification under Rule 23 are satisfied here.

### A.     The Plaintiff Class Satisfies the Requirements of Rule 23(a)

Class actions should be certified only if the requirements of Rule 23 have been met. Rule 23(a) sets out four prerequisites to such approval: (1) that the class be so numerous that joinder of all members individually is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the class representative are typical of the claims or defenses of the class; and (4) that the class representative will fairly and adequately protect the interests of the class. F.R.C.P. 23(a). Once those prerequisites are met, a moving party must show that the class meets one of the subsection requirements of Rule 23(b). F.R.C.P. 23(b).

#### 1.     *Numerosity*

The discovery materials presented by Defendants, which are consistent with Named Plaintiff's experience, is that 215 individuals fall with the category of Class Members.

There is no set formula that must be used by the court to determine whether the numerosity requirement has been met. *See Rex v. Owens*, 585 F.2d 432, 436 (10th Cir. 1978).

Rather, the matter is left to the broad discretion of the trial court.  *Johnson v. Thompson,* 971 F.2d 1487, 1498 (10th Cir. 1992).   Other jurisdictions and states, however, presume that the numerosity requirement has been satisfied when a certain number has been reached.  *See, e.g.,* *Consol. Rail Corp. v. Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (presuming numerosity at forty members); *Polich v. Burlington N., Inc.,* 116 F.R.D. 258, 261 (D. Mont. 1987) (similar finding that sixty members supported a presumption that numerosity requirement had been met).

In this case, the description of the proposed Class conclusively identifies the specific individuals who would qualify as Class Members and therefore the definition of the Plaintiff Class is sufficiently defined, *Jackson v. Unocal Corp.*, 262 P.3d 884, 887 (Colo. 2011), and there is no minimum number of class members that must be exceeded, rather, the nature of the particular case and the nature of the proposed class are controlling.  *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2010 U.S. Dist. LEXIS 38426, *6-7 (D. Colo. Mar. 29. 2010).  The Plaintiff Class members are spread throughout the state or states, if not beyond, and meet the number of members presumptively identified in *Hyde Park* by a multiple of 5.  The amount of money, while not insignificant, is not so large as to motivate a large number of class members to take on for themselves the burden of each going forward in prosecuting their own individual claims.  This Court has previously found 100 potential class members to be "a number that certainly prevents effective joinder . . ." *A-W Land Co. v. Anadarko E&P Co. LP,* No. 09-cv-22293-MSK-MJW, 2012 U.S. Dist. LEXIS 139241, *14-15 (D. Colo. Sept. 26, 2012).  Where the "individual claims are relatively small in relation to the cost of litigation," joinder of approximately 200 workers was not practical.  *Maez v. Springs Auto. Group, LLC,* 268 F.R.D.

391, 395 (D. Colo. 2010).  Therefore, for purposes of settlement, the numerosity requirement is satisfied here.

### 2.      *Commonality*

The requirement for class certification includes the necessity that there must be issues of law or fact common to the class.  *Joseph v. Gen. Motors Corp.,* 109 F.R.D. 635, 639 (D. Colo. 1986).  This, however, does not require every issue to be common within each and every class member.  *Id.*  "It is to be recognized that there may be varying fact situations among individual members of the class and this is all right as long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory."  *Id.* at 639-40 (quoting *Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181, 1189 (10th Cir. 1975)); *see also LaBerenz v. American Family Mut. Ins. Co.*, 181 P.3d 328, 338 (Colo. App. 2007).

Here, there is no dispute at this settlement stage that the legal theories of the Plaintiff Class are all identical with respect to the bases of the above described claims.  And as this Court has previously held: "Commonality exists if class members differ factually but challenge the application of a commonly-applied policy."  *A-W Land Co., LLC,* 2012 U.S. Dist. LEXIS 139241, at *9.  Here, the entire putative class was subject to the Defendants' commonly applied overtime policy, and thus the commonality requirement is met for purposes of settlement.

### 3.      *Typicality*

A plaintiff's claim is typical if it challenges the same conduct that would be challenged by the class.  *In re Qwest Savings and Investment Plan ERISA Litigation,* No. 02-RB-464 (CBS), 2004 U.S. Dist. LEXIS 24693, at 14-15 (D. Colo. Sept. 24, 2004).  Differing fact situations do not defeat typicality under the rule so long as the claims of the class representative and the

claims of the class members are based on the same legal or remedial theory. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988).

> Pursuant to Rule 23(a):
>
> Typicality requires that the class representative claims be typical of the class and that the class claims are encompassed by the named plaintiff['s] claims. This requirement is usually met "[w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented … irrespective of varying fact patterns which underlie individual claim."

*LaBerenz*, 181 P.3d at 338 (quoting *Ammons v. Am. Family Mut. Ins. Co.* 897 P.2d at 863; 1 H. Newberg, *Newberg on Class Actions* § 3-13, at 3-77 (3d ed. 1992)).

Here, the typicality requirement is met (for purposes of settlement) because the claims of the Plaintiff and the Class members are based on the same alleged legal theory: that under the Defendants' pay policies, the Class members were denied overtime pay in violation of Colorado wage and hour laws.

### 4. *Adequacy of Representation*

Rule 23(a) requires that a plaintiff representative "will fairly and adequately protect the interests of the class." To some extent, the typicality and adequacy issues overlap. *Devora v. Strodtman*, 282 P.3d 528, 534 (Colo. App. 2012) (citing *Tucker v. BP Am. Prod. Co.*, 278 F.R.D. 646, 655 (W.D. Okla. 2011)). However, the most important factors are whether the class representative has any interest antagonistic to the interests of the other class members and whether the representatives have an interest in vigorously pursuing the class claims. *See Amchem,* 521 U.S. at 625 (adequacy inquiry serves to uncover conflicts between named parties and the class they seek to represent). "Absent evidence to the contrary, a presumption of adequate representation is invoked," and "[a]ny doubt regarding adequacy of representation

should be resolved in favor of upholding the class, subject to later possible reconsideration . . ." *Schwartz v. Celestial Seasonings,* 178 F.R.D. 545, 552 (D. Colo. 1988).

In this case, there are no conflicts of interest based on any unity of positions between the Parties and Plaintiff Class members.  The Named Plaintiff no longer works for the Defendants and was in the same position vis-à-vis his employer as were and are all of the members of the Plaintiff Class.  The Named Plaintiff has the same interest in remedying Defendants' alleged violation of her rights as does each of the putative class members, so there is no conflict of interest in that regard. *Belote v. Rivet Software, Inc.,* No. 12-cv-02792-WYD-MJW, 2013 U.S. Dist. LEXIS 74529, at * 7-8 (D. Colo. May 28, 2013).  No conflict of interests exists at any level between the Parties.

In addition, the Named Plaintiff chose proposed class counsel who has extensive class action litigation experience along with many years of class action wage and hour experience on behalf of both plaintiffs and defendants.   Plaintiff's counsel has substantial experience in representing class actions in wage and hour disputes at not only the local, but also the regional and national level.  Further, Plaintiff's counsel has been involved in Colorado state and federal courts in class action litigation for over 30 years of continuous practice and has also defended against numerous wage and hour class actions, nationwide, while he served as Associate General Counsel to a Fortune 100 Colorado-based corporation from 2005 to 2011.   Under such circumstances, "the experience and competence of the attorney representing the class may inform the court's analysis."   *United Energy Corp.,* 281 F. R. D. 641, 654 (W.D. Okla. 2012).  Both Plaintiff and her counsel have and will continue to prosecute this action aggressively and

effectively on behalf of all class members.  The adequacy requirement is satisfied for purposes of settlement.

**B.**     <u>**The Plaintiff Class Satisfies The Requirements of Rule 23(b)**</u>

In addition to meeting the requirements of Rule 23(a), to obtain the Court's approval for a proposed class action settlement, the Parties must show to the Court that the settlement meets the qualifications of one of the forms of class action described in Rule 23(b).

Rule 23(b) requires a party seeking class certification to show either: (i) separate actions by class members would create a risk of inconsistent adjudications affecting the rights or obligations of class members or Defendants, or (ii) that the Defendants have acted or refused to act on grounds applying generally to the class, such that class-wide injunctive relief is appropriate, or (iii) that the common questions of fact or law predominate over individual questions.  Fed. R. Civ. P. 23(b)(1)-(3).  Rule 23(b)(3) provides that a class action may be suitable when the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient resolution of the case.

Here, the court should find that questions of law and fact common to class members predominate over individual issues and that the class action is the superior method for adjudicating this case, under Rule 23(b)(3).

In deciding predominance under Rule 23(b)(3), the Court should determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members.  *Pliego*, 313 F.R.D. at 127 (quoting *United Food and Commercial Workers Union v. Chesapeake Energy*

*Corp.*, 281 F.R.D. 641, 655 (W.D. Okla. 2012)).  Classwide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof.  *Id.* (quoting *United Food*, 281 F.R.D. at 655).

This case concerns Defendants' hourly wage workers and the overtime pay each such worker was paid. Ms. Collins' claims and those of the class arise from the same legal grievances, and questions common to these claims regarding the operations of Defendants' pay system, whether Defendants' overtime policy violated the law, and Defendants' good faith defense will be litigated time and time again if these claims are not aggregated.  *Id.*   Under these circumstances, "[i]n terms of efficiency for the parties and for the court, a class action is superior to individual suits in the effort to achieve a fair and efficient adjudication of the plaintiffs' claims."  *Bass v. PJCOMN Acquisition Corp.,*  No. 09–cv–01614–REB–MEH, 2011 WL 2149602, *4 (D. Colo. June 1, 2011); *Belote*, 2013 WL 2317243, at *2; *Maez,* 268 F.R.D. at 397; *Cook v. Rockwell Int'l Corp.*, 181 F.R.D. 473, 482 (D. Colo. 1998).  This is especially the case where, as here, the amount of recovery for each individual member of the Plaintiff Class might be insufficient to justify the costs of an individual lawsuit.  *See* Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d § 1781.

The Court should also find that the class action is superior to other available methods of trial for the fair and efficient resolution of the claims.  Rule 23 Class Actions, 4 Colo. Prac., Civil Rules Annotated R 23 at § 23.3, Types of Class Actions Maintainable (4th ed. Sept. 2014).

First, in this case, since members of the Plaintiff Class are able to opt out of the settlement, no putative member would lose his or his ability to individually control the outcome of the litigation as it results specifically to each of them.  Further, to date no other member of the Plaintiff Class has contacted Plaintiff's counsel expressing any indication that such individual wished to be directly involved in the case as a named party.

Second, to the best information of the Parties, no other litigation has been commenced or is pending in any jurisdiction that raises the issues raised in this lawsuit.

Finally, there will be very few difficulties (if any) encountered in managing the settlement of this action according to the terms that have been negotiated between the parties and which are now subject to approval by the Court.   The proposed Settlement Administrator Spradlin has been named and has successfully performed in the role of a settlement administrator in this district previously.  *See Dominguez v. Wilson Roofing Division LLC*, No. 16-cv-00177-JLK-MEH, (D. Colo. Sept. 20, 2016), Order on Amended Joint Motion for Preliminary Approval of Class Action Settlement and Certification of Plaintiff Class (ECF  No. 28 at 5).   The Defendants maintain the records necessary to allow the Settlement Administrator to manage the settlement funds.

As such, the Court should conditionally certify the Class for settlement purposes.

**VII.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN**

Pursuant to Rule 23, the Court "must direct notice in a reasonable manner to all class members who would be bound by a propos[ed settlement]. . . . The hallmark of the notice inquiry is reasonableness."  *Lucas*, 234 F.R.D. at 696 (internal quotations omitted); *see also Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory "if it

generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard").

The proposed notice and notice plan satisfy the requirements of Rule 23(e) and due process. The proposed notice explains the nature of the action and the general terms of the Settlement (including the total settlement amount, the fact that the settlement amount will include attorneys' fees and costs subject to court approval, how settlement payments will be calculated, and the claims that will be released). The proposed notice also explains how the Class Member may participate, exclude himself or herself, or object to the terms of the Settlement. This information satisfies Rule 23(e) and due process. *See Villegas*, 2012 WL 5878390, at *8 (approving a notice containing the same categories of information). These notices have been crafted with a specific eye to findings and rulings this Court has previously made and approved in the recent settlement and notice provisions outlined in the case of *Armijo v. Star Farms, Inc.,* No. 14-cv-01785-MSK-MJW.

## VIII.   APPOINTMENT OF PLAINTIFF'S COUNSEL AS CLASS COUNSEL

For the reasons set out in Section V (B), above, undersigned Plaintiff's counsel requests the court to appoint him and his law firm as plaintiff's class counsel.

## IX.  APPOINTMENT OF JENNIFER SPRADLIN AS CLAIMS ADMINSTRATOR

For the reasons set out in Section IV (E), above, Plaintiff's counsel hereby requests that as part of its preliminary approval of the within Settlement the Court approve the appointment of the Sawaya Law Firm's legal assistant and office administrator, Jennifer Spradlin.

WHEREFORE, the parties jointly request that the Court issue an order granting this motion and taking the following actions:

1. Preliminarily approve the attached Settlement along with its terms;

2. Conditionally certify, for settlement purposes only, the Class under Rule 23 of the Federal Rules of Civil Procedure;

3. Approve the Class Notice in the tendered form, find that the proposed method of disseminating the Class Notice meets the requisite legal standards and the requirements of due process and is the best notice practicable under the circumstances, and authorize notice to the Class members consistent with the procedures set forth in the Settlement;

4. Approve the procedures set forth in the Settlement by which Class Members may assert objections to the Settlement;

5. Appoint Ms. Jennifer Spradlin as the Claims Administrator;

6. Appoint Plaintiff's Counsel as class counsel;

7. Set a date for the Final Fairness hearing; and

8. Set a date that is approximately seven (7) days before the date for the Final Fairness Hearing by which the Parties must file their respective responses to any objections to the Settlement that were timely filed by Class Members on or before the objection deadline, as well as any filings by the Parties supporting final approval of the Settlement, including Plaintiff's counsel's submission of filings supporting any claim to attorney's fees and costs and expenses of litigation.

Respectfully submitted, this 9th day of August, 2017.

S/ David H. Miller                              S/ Dana L. Eismeier

David H. Miller, Esq.                          Dana L. Eismeier, Esq.
SAWAYA & MILLER LAW FIRM         Erik K. Schuessler, Esq.
1600 Ogden Street                              BURNS, FIGA & WILL, P.C.
Denver, CO 80218                              6400 S. Fiddler's Green Circle, Suite 1000
Phone:        303-839-1650                Greenwood Village, CO  80111
Fax:           720-235-4377                 Phone:         303-796-2626
E-mail:       DMiller@sawayalaw.com   Fax:            303-796-2777

E-mail:        deismeier@bfwlaw.com

**Attorneys for Plaintiff**
**Angela Collins**

**Attorneys for Defendants**
**DKL Ventures, LLC and Eric David Lewis**

**Certificate of Service**

I hereby certify that I have served a true and correct copy of the above **AMENDED JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** by filing same with the Court's electronic filing system for deliver to opposing counsel of record in the within action this 9th day of August, 2017.

_____
David H. Miller