**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-00070-MSK-KMT

ANGELA COLLINS,
 and all others similarly situated,

           Plaintiffs,

v.

DKL VENTURES, LLC and ERIC DAVID
LEWIS

      Defendants.

---

## JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
---

Pursuant to the Court's previously entered Order of October 26, 2017 (ECF No. 63) the Parties submit the within Joint Motion for Final Approval of Class Action Settlement.

Pursuant to D.C.COLO.LCivR 7.1(a) undersigned counsel here represents that he is authorized to file this document on behalf of all parties.

Named Plaintiff Angela Collins ("Plaintiff"), by her undersigned Counsel, respectfully moves this Court for an Order (1) granting final approval to the proposed Amended Settlement Agreement ("Settlement" or "Settlement Agreement"); and (2) and approving the proposed Distribution of Settlement Payments.

## I.     INTRODUCTION

On August 9, 2017, the parties filed their Amended Settlement Agreement of

Class Action Claims (ECF No. 62-1) as an exhibit to their Amended Joint Motion for

Preliminary Approval of Class Action Settlement ("Joint Motion"). (ECF No. 62). On

October 26, 2017, the Court entered its Order Granting Motion to Certify Rule 23 Class

and Preliminarily Approve Settlement and Setting Final Approval Hearing ("Order").

(ECF No. 63). The Court set a Final Fairness Hearing for March 12, 2018, at 9 a.m., after

additionally ordering the terms under which the proposed settlement would proceed until

the Final Fairness Hearing. *Id.*

In its above Order the Court preliminarily certified the Plaintiff Class as follows:

> [A]ll current and former hourly employees of the Defendants who
> worked more than 12 hours in a day or more than 40 hours in a week during
> the time period from January 1, 2013 to December 31, 2015 and who were
> not paid overtime wages for those hours.

Order at p. 3. (ECF No. 63). In that Order the Court appointed undersigned Plaintiff's

counsel to serve as Class Counsel. *Id.* at 4.

Thereafter, Plaintiffs' Counsel, through the Class Administrator, Jennifer J.

Spradlin—whose role was agreed to by the parties—sent timely Notices to the

preliminarily approved 215 class members. *See* Declaration of Jennifer Spradlin, attached

hereto as Exhibit 1 at ¶¶ 3-5. The Notices proposed in the Joint Motion by the parties

were amended by the Court's Order. ECF No. 53 at pp. 6-7. The court-approved version

of the Notices were the versions sent by Ms. Spradlin.  *Id.* at ¶ 3. *See* Attachment A to

Spradlin Declaration, Exhibit 1, providing the Court with the English and Spanish Notice

packets sent to the Class Members.

The initial opt-out period closed (by postmark dated on or no later than) 60 days subsequent to the date of the mailing of Notice on November 17, 2017. *See* Declaration of Jennifer J. Spradlin at ¶ 6. As stated by Ms. Spradlin, one class member opted-out of the Settlement. *Id.* at ¶9. A copy of that request to be excluded from the Settlement Class is attached as Attachment B to the Spradlin Declaration, Exhibit 1. The Rule 23 class, minus the one opt-out now contains 214 members (including the named Plaintiff, Angela Collins).

Pursuant to the terms of the Settlement the parties agreed and the Court has preliminarily approved the payment of a $200,000.00 common fund payable over a term described in the Settlement Agreement to satisfy the class action and individual claims in this case, which amount includes attorneys' fees, costs of litigation and settlement administration as follows: At least $120,000.00 to be paid to approved Class Members, $12,000.00 as reimbursement for the costs of litigation and settlement administration, $8,000.00 as payment for the individual settlement of the above-captioned Plaintiff's FLSA case (not subject to Court review since the Court's position is that it is not required to approve or disapprove an individual's FLSA settlement), and no more than $60,000.00 in attorney's fees. Order at p. 6, n. 4. ECF No. 63. The above referenced $200,000.00 has been paid already into the Administrator's trust account. The computed amounts owed to each Class Member based on the number of pro rata hours worked is set out in Attachment E to Exhibit 1.

As a benefit to the Settlement Class, Ms. Collins is not requesting an additional

incentive fee or payment for having served as the Rule 23 class representative.

The proposed final settlement is as good a recovery for the Class as could reasonably hope for and is adequate under the governing standards for evaluating class action settlements in this Circuit. *See, e.g., Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (citation omitted) (and especially in light of the fact substantial questions as to the retroactivity of the authorizing regulation, the availability and commitment of witnesses, and the financial condition of the Defendants are outstanding). Further, Defendants have represented that they have corrected their pay policies of not paying earned overtime, and have reported and demonstrated their financial condition, both corporately and personally. In consideration of those facts the recovery appears eminently reasonable.

To date, 8 Class Members have not been able to be located but nonetheless, under the terms of the Court's Order they have not excluded themselves from the Settlement Class and the parties will attempt to make distributions to them. If those Class members cannot be timely located, then, as addressed below the parties have agreed that those monies should be paid the to the proposed *Cy Pres* recipients as and if approved by the Court.

Accordingly, the parties jointly and respectfully request that this Court enter the requested Order granting final approval to the Settlement, final certification of the Class, and approval of the distribution of settlement payments as set out above.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Description of Litigation

The case was filed in January, 2016. The gravamen of the complaint was that the Defendants' hourly caregiving workers were not being paid for their overtime. Plaintiffs are hourly workers who performed in-home health care assistance in the Denver, Colorado area during the class period of two years prior to the filing of the complaint starting on or about January 1, 2013, through December 31, 2015. The main issue in the case has been whether such workers were exempt from overtime under state and/or federal law.

After the filing of the pleadings the parties engaged in significant voluntary discovery disclosures, including the production and review of several hundred pages of payroll documents, analysis of aggregated employment time cards and payroll records, and consultation after review by plaintiff's payroll analyst. The parties aggressively litigated the legal issue of exemption which was denied without prejudice after over one year and four months of lengthy and complicated briefing. *See* ECF Nos. 12 (Defendants' motion to dismiss); 29 (Plaintiff's response); 31 (Defendants' reply); 32-33 (Magistrate Judge's recommendation to grant dismissal and Plaintiff's objection to the recommendation); 35 (Defendant's response to objections); 38 (Opinion sustaining objections and denying motion to dismiss); 39 (Defendant's motion for reconsideration); 41 (Plaintiff's response); 42 (Defendant's reply); 61 (Order denying motion for reconsideration and joint motion to approve settlement of FLSA and state Rule 23 class action).

Over the course of that time the parties actively pursued settlement negotiations and early neutral evaluation; and met with the Magistrate Judge for productive

discussions (but no final resolution) in January 2017. *See* ECF No. 48. However, after further exchange of discovery and additional negotiations the parties reached an agreement that they submitted to the Court for its preliminary approval. ECF No. 60 (with attached proposed settlement agreement at ECF No. 60-1). After the Court rejected the proposed initial settlement agreement the parties reached a subsequent amended agreement which it again presented to the Court for its review. ECF No. 62 and Exhibit 62-1.

On October 26, 2017, the Court granted preliminary approval of the Amended Agreement with certain modifications and set the final approval hearing as described above. (ECF No. 63).

Plaintiff entered into this proposed final Settlement Agreement with a full understanding of the strengths and weaknesses of the claims. This understanding is based on, *inter alia*:

(1) the investigation relating to the events and transactions underlying Plaintiff's claims informed by Class Counsel's years of litigating wage and hour cases and class actions against numerous parties; (2) discovery concerning Defendants' practices, consisting of interviews of Defendants' workers along with the review and analysis of several hundred pages of documents produced by Defendants, and discussions with Defendants and their counsel, along with discovery materials and information provided by the Defendants; (3) the review and analysis of other publicly

available information as well as information obtained through the research of a private

investigator concerning  Defendants' financial and business status.

Plaintiffs have carefully evaluated significant issues of law and fact which could

affect any recovery by the class.  When considering the range of possible recovery, and

risks associated therewith, Plaintiffs and class counsel determined that the proposed

Settlement is fair, adequate and reasonable.

By agreement of the parties, Jennifer J. Spradlin was appointed to be the Class

Administrator. Ms. Spradlin's Declaration is attached hereto as Exhibit 1, and her

statements contained in her Declaration and the attachments thereto are here incorporated

by this reference.

### B.      The Proposed Settlement

As reflected in the Amended Settlement Agreement, the proposal creates a

common Settlement Fund of $200,000.00 in total payments which are currently being

held in the Administrator's trust account for distribution. Once and if final approval is

granted by the Court, the Administrator, with the cooperation of the Sawaya & Miller

Law Firm and review by Defendants' counsel, will distribute the settlement funds to the

Class Members and recipients as set out in the Settlement and as reflected in the Court

Order (ECF No. 63), as well as any final order entered in this case.

Notice was given in English and Spanish and in the method of publication

approved by the Court in its Order Preliminarily Approving Settlement (ECF  No. 63).

*See* Exhibit 1, ¶¶ 6-7, Spradlin Decl., along with Attachment A referenced in her

Declaration (Notices served in English and Spanish).

Additionally, Class Counsel took extraordinary measures to provide actual and further notice to the Class Members, researching social security numbers through a private investigation firm to try to find current mailing addresses; calling and sending texts to cell phone and emergency contact numbers provided through Defendants' work records; sending text messages to all class members whose telephone numbers could be obtained; meeting after hours and communicating with class members in order to maximize the number of eligible class members, and searching through a private investigation firm what other class members' contact information might be. Miller Declaration. Exhibit 2 at ¶¶ 6-7.

C.    **Preliminary Approval, Effectuation of Notice to the Class and Objections**

As noted above, this Court preliminarily approved the Settlement on October 26, 2017. (ECF No. 63). Consistent with the Court's above Order, the Settlement Administrator, Jennifer Spradlin ("Spradlin"), mailed the Court-approved Notice to 215 Class Members via First Class Mail postage prepaid. Spradlin Declaration ("Decl.") Exhibit 1, at ¶¶ 5-6.

Seventy-seven (77) of the 215 Notice forms sent out were returned as undeliverable. Spradlin then employed the Colorado private investigations firm of Davis & Associates to perform a nationwide search for further contact/mailing information for the class members for such returned notices, and updated contact/mailing information was thereby obtained for 69 of the 77 Class Members whose addresses previously yielded undeliverable Notices. Exhibit 1, Spradlin Decl. at ¶ 9. As of today's date there are 8

Class Members for whom the Administrator does not have deliverable addresses. *Id.* at ¶¶

8-9. Those 8 Class Members have claims totaling $5,517.08. Attachment C to Decl.

Exhibit 1.  Pursuant to the Agreement that money, along with the claim of the opt-out for

$.95 (for a grand total of $5,518.03) would go (equally) to the proposed *cy pres*

recipients, the Colorado Center on Law and Policy and the Colorado Fiscal Institute.

      Plaintiff submits that the above-described notice protocol meets the Court's

above-described Orders as well as the due process concerns of Rule 23 of the Federal

Rules of Civil Procedure which requires that notice be "reasonably calculated under all

the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections." *DeJulius v. New England Health Care*,

429 F.3d 935, 944 (10th Cir. 2005) (citations omitted).   Here, the above-described

notice program fully apprised Settlement Class Members of the existence of the Action,

the proposed Settlement, and the information necessary to make informed decisions

about participation in the case.  Similar notice programs used in the settlement of

analogous actions have been judicially approved as appropriate, fair and adequate. [1]

## III. STANDARD OF REVIEW

      In reviewing Plaintiff's request to approve the Settlement, the Court must

determine (among other things) that the proposed settlement is "fair, adequate and

reasonable."  FED. R. CIV. P. 23(e)(2).  *See also Martinez v. Maketa*, No. 10-cv-02242,

---

[1] *See, generally, Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683 (general and thoughtful discussion of issues facing the court in consideration of a class action final  approval order).

2011 WL 2222129, at *2 (D. Colo. June 7, 2011).  "The court has broad discretion in

deciding whether to grant approval of a class action settlement." *Ashley v. Reg'l

*Transp. Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Trust*, No. 05-

cv-01567, 2008 WL 384579, at *4 (D. Colo. Feb. 11, 2008) (citing *Jones*, 741 F.2d at

324). "In exercising its discretion, the trial court must approve the settlement if

it is fair and reasonable." *Id.* (citations omitted).  Further, "[i]n making the

determination whether to approve a class action settlement, the court should . . .

"not decide the merits of the case or resolve unsettled legal questions." *Id.* (citing

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)); *see also Childs v. Unified

*Life Ins. Co.*, No. 10-cv-23, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011).

"In a case where experienced counsel represent the class, the Court 'absent fraud,

collusion, or the like, should hesitate to substitute its own judgment for that of counsel,'

and the 'trial court is entitled to rely upon the judgment of experienced counsel for the

parties.'" *Williams v. Sprint/United Mgmt. Co.*, No. 03-cv-2200, 2007 WL 2694029, at

*4 (D. Kan. Sept. 11, 2007) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.

1977)).

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Public policy favors the settlement of civil cases, especially complex class

actions like this Action. *See* Newberg & Conte, NEWBERG ON CLASS

ACTIONS, § 11.41 (3d ed. 1992) ("[T]here is an overriding public interest in settling

and quieting litigation," and this is "particularly true in class action suits."); *City P'ship*

*Co. v. IR-TCI Partners V, L.P.*, 252 F. Supp. 2d 1114, 1121 (D. Colo. 2003)

("recogniz[ing] the public policy favoring voluntary settlement of disputes"); *Gambrell*

*v. Weber Carpet, Inc.*, No. 10-cv-2131, 2012 WL 162403, at *2 (D. Kan. Jan. 19, 2012)

("If the settlement reflects a reasonable compromise over issues … that are actually in

dispute, the Court may approve the settlement to promote the policy of encouraging

settlement of litigation.") (citation  omitted). This District Court's stated policy similarly

favors settlement or alternate means of dispute resolution. *See* D.C.COLO.Civ.R 16.6.

### A.     The Settlement Satisfies This Circuit's Four-Pronged "Fairness" Test

In assessing whether the settlement is fair, reasonable and adequate the trial

court should consider:

(1)     whether the proposed settlement was fairly and honestly negotiated;

(2)     whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

(3)     whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)     the judgment of the parties that the settlement is fair and reasonable.

*Martinez v. Maketa,* 2011 WL 2222129, at *2 (citing *Jones* 741 F.2d at 324); *see also In*

*re Qwest Commuc'ns. Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1133, 1137 (D. Colo. 2006)

(Blackburn, J.) (citing *Rutter & Wilbanks Corp. v Shell Oil Co.*, 314 F.3d 1180,

1188 (10th Cir. 2002)).

### 1.     The Settlement was fairly and honestly negotiated

With respect to this first factor, the Court is required to "ensure that the agreement is not illegal, a product of collusion, or against the public interest." *Ashley*, 2008 WL 384579, at * 5 (citation omitted).  The measure of potential relief afforded to the Class alone attests to the fact that this is not a collusive settlement.

The Settlement was also negotiated at arms'-length by experienced counsel with decades of collective experience in litigating large, complex class actions.  As reflected in Class Counsel's resume, the law firm of Sawaya & Miller are qualified experienced counsel with a broad-based, multi-jurisdictional practice in complex class action litigation.  Miller Decl., Exhibit 2, ¶¶ 8-10 .  Class Counsel has investigated the Defendants' practices, reviewed and analyzed hundreds of pages of documents and data produced in this litigation along with voluminous discovery and investigative disclosures, and was guided and informed by the assistance and counsel of the Magistrate Judge in the settlement negotiations, as well as by discussions and discovery documents provided by the Defendants during the settlement negotiations. *Id*.

## 2. Serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt

The second factor of this Circuit's four-pronged "fairness" test requires that the Court examine Plaintiffs' likelihood of success on the merits. This factor requires an examination of whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt.  The presence of such doubt augurs in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation. *In re Qwest*

*Communications. Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1138; *see also Ashley,* 2008 WL 384579, at *6.

Defendants throughout this litigation have strenuously argued that their alleged improper actions were lawful, arguing that the Companionship Services Exemption set out in 29 U.S.C. §213 (a)(15) had not been eliminated based on the court rulings argued by Defendants in their motion to dismiss. ECF No. 12. That subject served as a major issue in the case and after over 16 months of litigating that question, the matter was still outstanding when the Court denied Defendants' motion of reconsideration *without prejudice* (ECF No. 61), leaving open the question; so if the litigation proceeded without settlement, both sides remained vulnerable to having their positions fatally undercut by subsequent rulings with respect to the status of the exemption and the retroactivity of the underlying change in the applicable regulations. Likewise, Defendants argued that the correct textual interpretation of the Colorado Wage Act and Minimum Wage Order did not authorize a lawsuit nor include within their ambit hourly healthcare workers.

While Plaintiffs contend that Defendants are mistaken about the likelihood, if any, for penalty or other supplemental damages, they acknowledge the possibility that Defendants, neither jointly nor severally, would be able to satisfy any further judgment or settlement in this case. And in fact during the course of this settlement process Plaintiff's counsel has been informed that the corporate defendant has been sold; and under Colorado law no claim would lie against the individual owner of the company, but only against the company itself. *Leonard v. McMorris,* 63 P.3d 323, 332-333 (Colo. 2003).

Thus, while Plaintiffs are confident in their theories of recovery, Plaintiffs are

equally aware of the possibility of ending up in the practical sense of being unable to obtain any financial remedy for their clients other than a potential claim in a bankruptcy proceeding.

Accordingly, while Plaintiffs believe they would succeed at trial, there is no assurance that in the real world that would mean that any benefit could ultimately be obtained for members of the plaintiff class. Settlement at this time, in light of these uncertainties, is fair to the Class and is by far the most prudent course of action.

### 3. The value of the immediate recovery outweighs the mere possibility of future relief and protracted and expensive litigation

As for the third factor: the "value of an immediate recovery" means "the monetary worth of the settlement." *Wilkerson v. Martin Marietta Corp.,* 171 F.R.D. 273, 283 (D.Colo. 1997); *Childs*, 2011 WL 6016486, at *13 (citation omitted). *Accord Shaw v. Interthinx, Inc.*2015 WL 1867861 at *3 (D.Colo. April 22, 2015). Settlement provides for the recovery of $200,000.00 to class members, less attorney's fees, costs and expenses of suit, and administration, for a total distributed amount of not less than $120,000.00. The Court must thus evaluate whether the settlement of this hourly worker class action at this level outweighs the risk and expense of future litigation. *See Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984) (confirming the nature of the inquiry). Counsel believes that the monetary recovery is reasonable in light of the factual allegations and disputes outlined above. If the Settlement is not approved, the Parties face protracted litigation with the real possibility of no monies being received by the Settlement Class.

In sum, while Plaintiffs continue to believe that they could prove their case to a jury, the possibility exists that after already years of protracted litigation there will be no financial benefit whatsoever available to member of the class and that further litigation costs and attorney's fees incurred by both sides will do nothing but reduce the amount available to be had by the Class Members. Accordingly, while not a complete remedy, the settlement amount is a substantial win for the plaintiff Class Members in light of a reduced amount that might be available to them if they continued this litigation.[2]

### 4. The judgment of the parties that the Settlement is fair and reasonable

The fourth factor to this Circuit's fairness test examines the judgment of the parties. "Obviously, it is the judgment of Class Counsel, who specialize in this type of litigation, that the settlement is fair and reasonable. That judgment is entitled to some weight in considering this factor." *In re Qwest Communication Int'l, Inc. Sec. Litig.*, 625 F.Supp.2d at 1138.

Here, as set out above, Class Counsel is a qualified, experienced attorney with broad- based experience in complex class action litigation. *See* Miller Decl., Exhibit 2, ¶¶ 8-10.

---

[2] *See e.g. Childs,* 2011 WL 6016486, at *13 ("The class will be well-compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."); *Ashley v. Reg'l Transp Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Tr.,* 2008 WL 384579, at *7 (D.Colo. Feb. 11, 2008) ("In contrast to the immediate relief afforded by the settlement, it would in all probability take many years to litigate the case and resolve all appeals…. Balancing the benefits of immediate settlement versus the costs of protracted litigation, [the court] finds that the third element is satisfied.").

Importantly, over the course of the last 6 years, Class Counsel has litigated wage and hour class action (and cooperative action) issues and received favorable decisions in numerous cases involving analogous class action litigation in cases where purported classes have ranged from 50 to tens of thousands of employees. *See* contemporaneously filed Unopposed Verified Motion for Attorney's Fees. Thus, Class Counsel was well-positioned to evaluate the strengths and weaknesses of the case through both general experience litigating class actions and specific experience litigating Rule 23 wage and hour cases.

Further, no objections at all to the proposed Settlement were filed by Class Members. Only one member has opted-out and her payment would have been less than $1.00. As was noted in a final approval decision by another Colorado federal District Court under similar circumstances, "The Court also finds it noteworthy the fact that no … individuals have objected to the Settlement." *Ashley v. Reg'l Transp Dist. & Amalgamated Transit Union Div. 1001 Pension Fund Tr.,* 2008 WL 384579, at *8 (D. Colo. Feb. 11, 2008).

**B.      The Court Should Approve the Payment of Undistributed Funds to the Colorado Fiscal Institute and the Colorado Center on Law and Policy, as Agreed to by the Parties**

As part of the settlement negotiations the parties agreed that if there were any undistributed monies available from the $200,000.00 settlement fund then such monies would be distributed *cy pres* to the Colorado Center on Law and Policy ("CCLP") and the Colorado Fiscal Institute ("CFI"). Both are Colorado 501(c)(3) non-profit organizations

and their goals and missions statements are attached as Exhibits 3 and 4. In sum, the

CCLP's mission is to advance the health, economic security and well-being of low-

income Coloradans through research, education, advocacy and litigation. Exhibit 3. And

the CFI's mission is to provide credible and accessible analyses of fiscal and economic

issues facing Colorado. Exhibit 4.

In Colorado, the *cy press* doctrine has been explained as follows with a reference

to the Restatement (Second) of Trusts, §s 399 (1959):

> If property is given in trust to be applied to a particular charitable
> purpose, and it is or becomes impossible or impracticable or illegal to carry
> out the particular purpose, and if the settlor manifested a more general
> intention to devote the property to charitable purposes, the trust will not fail
> but the court will direct the application of the property to some charitable
> purpose which falls within the general charitable intention of the settlor.

*Dunbar v. Bd. of Trustees of George W. Clayton Coll.*, 461 P.2d 28, 30 (Colo. 1969).

In this case the parties have already anticipated the need for the redirection of part

of the settlement fund and have agreed on the specified organizations. At the current time

the parties know that at least $.95 cents will be available for such distribution. To date

and as stated above, the administrator has been unable to successfully communicate with

8 Class Members who would be owed a total of $5,517.08 (Exhibit 1, Attachment C), but

those individuals have not yet been excluded from the Class and some or all may

ultimately end up being contacted and may accept the check distributed to them if and

when the Court grants final approval to the Settlement. Instead of having to come back to

the Court and reopen the case months down the road, the most efficient way to handle

what is now an unknown sum for a later distribution is to ask the Court to approve the *cy pres* plan as proposed.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant the within Joint Motion for Final Approval of the Amended Settlement Agreement, and approve the Settlement distribution set out therein.

Dated this 2nd day of March, 2018.

By:

*s/ David H. Miller*
David H. Miller
Adam Harrison
Sawaya & Miller Law Firm
1600 Ogden Street
Denver, CO 80218
303-839-1650 X 1090
720-235-4380 (Fax)
DMiller@sawayalaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2018, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all of Defendants counsel of record:

*Adam M. Harrison*

_____

Adam M. Harrison