## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00070-MSK-KMT

ANGELA COLLINS,
 and all others similarly situated,

                         Plaintiffs,

v.

DKL VENTURES, LLC and  ERIC DAVID
LEWIS

                         Defendants.

---

## UNOPPOSED VERIFIED PLAINTIFF'S MOTION
## FOR ATTORNEY'S FEES, COSTS AND ADMINISTRATION EXPENSES

---

Named Plaintiff Angela Collins ("Plaintiff"), by undersigned Class Counsel, and pursuant to Fed. R. Civ. P. 23(e) and with respect to Plaintiff's individual Fair Labor Standards Act ("FLSA") award, 29 U.S.C. § 216(b), respectfully files this Unopposed Verified Motion for Attorneys' Fees, Costs and Administration Expenses, and in support of this motion undersigned counsel sets forth the following:

### Statement Concerning Conference Under Local Rules

The parties have consulted about this motion and Defendant does not oppose the granting of this motion.

I.      **AS THE PREVAILING PARTY THE PLAINTIFF IS ENTITLED TO
A REASONABLE AWARD OF ATTORNEYS'
FEES AND COSTS.**

In this case, Plaintiff, through settlement has prevailed in her claims on her own behalf

and on behalf of her co-workers, achieving a total settlement of $200,000.00 (including

damages, fees and costs, including the costs of Administration). [1] She therefore has succeeded

in furthering the employees' right to be paid for their overtime compensation.  This case raised

claims under the Fair Labor Standards Act ("FLSA") for Plaintiff's own overtime

compensation, and under Rule 23(b)(3) for class damages for alleged wage payments under

Colorado state wage and hour law.

The law requiring a reasonable award in Rule 23(b)(3) settlements or common fund

cases is firmly established. *Gottlieb v. Barry,* 43 F.3d 474, 482 (10th Cir. 1994) (class counsel

who obtains a common fund settlement is entitled to recovery a reasonable attorneys' fees paid

from the fund). Generally, courts award fees in common fund cases "based on a percentage of

the common fund obtained for the benefit of the class" thereby "proportionately spreading the

payment of attorney fees among the class members." *Lucken Family Ltd. Partnership, LLP v.

Ultra Resources, Inc.,* 2010 WL 5387559, at *2-3 (D.Colo. Dec. 22, 2010), *quoted with

approval, Shaw v. Interthinx, Inc.,* 2015 WL 1867861, at *5 (D.Colo. April 22, 2015).

The Tenth Circuit favors that approach. *See, e.g., Brown v. Phillips Petroleum Co.,* 838

F.2d 451, 454 (10th Cir.1998).  The Tenth Circuit approves of the common fund method,

instead of the lodestar approach because a percentage of the common fund "is less subjective

than the lodestar plus multiplier approach," matches the marketplace most closely, and is the

better suited approach when class counsel were retained on a contingent fee basis, which the

---

[1]      This total amount does not include the employer's share of payroll taxes or contributions
resulting from this settlement, which the Defendants will pay.  Amended Settlement Agreement,
ECF No. 62-1 at ¶ 5.

Court will see *infra* was the circumstance in this case. *Id.* at 484. *See also Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993).

Additionally, and with respect to the Plaintiff's FLSA recovery, "[t]he court in [an FLSA] action *shall...* allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" where plaintiffs prevail. 29 U.S.C. §216(b) (emphasis added). Accordingly, in an FLSA case this Court has rather approved the use of the lodestar approach, calculating the number of hours reasonably expended times the applicable reasonable hourly rate. *Felix v. Thai Basil,* No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *3 (D.Colo. May 6, 2015), *quoting Baker v. Vail Resorts Management Co.,* No. 13-cv-01649-PAB-CBS, 2014 WL 700096, at *3 (D.Colo. Feb. 24, 2014).

The financial resolution of this case mainly revolves around the litigation's Rule 23 claims with respect to the gross amount of damages recovered and the number of Class Members included. While the named Plaintiff has her own recovery under her FLSA claim, both the class and the individual claims are governed by a common core of operative facts. To satisfy either and both analyses, Class Counsel presents this motion for attorney's fees and costs under both approaches—the common fund percentage method as well as the lodestar analysis.

## II.    PLAINTIFF'S REQUEST FOR FEES AND COSTS IS REASONABLE UNDER THE COMMON FUND DOCTRINE

In this proposed agreement between the parties the tendered settlement agreement creates a common fund to pay the Class Members pro rata, given their comparative work hours with Defendants. Plaintiff's counsel seeks $60,000.00 in fees which is less than a one-third payment of the $200,000.00 common fund.

3

To date, this matter has been litigated for two years without compensation to Plaintiff's counsel. Given the favorable results achieved, the quality of representation, and the novelty of the claims (especially involving the issue of retroactivity of the change in Department of Labor ("DOL") regulations), Plaintiff's counsel's position is that such an award is more than reasonable.

The controlling principle in common fund litigation is that a lawyer who recovers such a fund for the benefit of a class is entitled to a reasonable attorney's fee from the fund as a whole. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The amount of any such award is within the sound discretion of the district court. *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597, 614 (D. Colo. 1974) (The trial court has reasonable discretion in setting the amount of attorneys' fees in a class action suit….").

Under this common fund doctrine there are two ways of compensating counsel. The first is by way of a "percentage"—the most common approach that most closely aligns the interests of the lawyers with those of the plaintiff class, and which is consistent with arrangements in the market place for contingency cases:  And the second approach which is through a lodestar analysis using a court-approved reasonable hourly rate for the attorneys involved, multiplied by the reasonable number of hours spent on the case, and adjusted by a "multiplier" premium if and when appropriate.  *Lukas v. Kmart Corp.,* No. 99-cv-01923-JKL-CBS, 2006 WL 2729260, at *3 (D.Colo. July 27, 2006). *See Uselton v. Commercial Loveless Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir. 1993); *Rosenbaum v. Mac Allister,* 64 F.3d 139, 1445 (10th Cir. 1995). The Tenth Circuit, however, has expressed "a preference for the percentage of the fund method" in common fund cases. *Id. See Lukas,* 2006 WL 2729260, at *3. Regardless of which method is chosen, the District Court should consider the 12 factors

4

articulated in the case of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974). *Id.* at*3.

### A.  The Fee Agreement With the Plaintiff is for a One Third Recovery

The Plaintiff entered into a 1/3 third contingency fee agreement with undersigned counsel's law firm in November of 2015. Such an agreement is the norm in employment related cases and is the most commonly encountered fee arrangement in similar class actions. *See Lucken, supra,* 2010 WL 5387559, at *5-6 ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (*citing, inter alia, Vaszlavik v. Storage Tech. Corp.* No. 95-B-2525, 2000 WL 1268824, at *4 (D.Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable").). *See generally,* Elaine Buckbert, Todd Foster, Ronald Miller, and Stephanie Plancich, *Recent Trends in Class Action Litigation: Bear Market Cases Bring Big Settlement,* pp. 9-10 (NERA Feb. 2005), n. 5: in 40% of the cases the fees requested were 33%).

That said, undersigned counsel is well aware that this Court sits in equity to most fairly distribute the fees and costs in a case for the benefit of the Class Members. *See US Airways v. McCutchen,* 569 U.S. 88, 104, 133 S.Ct. 1537, 1550, 185 L.Ed.2d 654 (2013). The Court, however, should take into consideration that while the contingent fee agreement is for 1/3, Plaintiff and Defendants have agreed that Plaintiff will seek only an award of 30% of the common fund for fees so that a larger recovery may be had by members of the class. *Compare, Whittington v. Taco Bell of America, Inc.,* No. 10-cv-01884, 2013 WL 6022972, at *6, (D.Colo. Nov. 13, 2013) (requesting and receiving approximately 39% fee recovery in common fund Rule 23 class action).

### B.  Lodestar and Multipliers

And examination of the reasonable number of hours spent times the reasonable hourly rates charged discloses the lodestar. *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1998). A multiplier calculation is meant to address, among other things, the results achieved, the quality of representation, the complexity and magnitude of the litigation, the consequent risk of non-payment, and the contingent nature of the expected compensation. *See Vaszlavik v. Starage Tech. Corp.,* No 95-B-2525, slip op. at 2 (D.Colo. March 9, 2000)(citing *Uselton v. Commercial Loveless Motor Freight, INc.,* 9 F.ed.3d 849, 853 (10th Cir.1993) and *Rosenbaum v. MacAllister,* 64 F.3d 1439, 1445 (10th Cir. 1995).

### C.  Cross-Check

As noted above, while the Ten Circuit has recognized the primacy of the percentage recovery approach, the trial courts have also endorsed the use of the lodestar method as a "cross-check" in determining the reasonableness of the award. *See, e.g., Felix v. Thai Basil at Thornton, Inc.,* No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *3. (Comparing the requested amount with the lodestar amount and finding the lodestar higher and therefore treating the request for the lower amount more favorably).

If the Court looks at the difference between the amount requested by Plaintiff under the percentage approach (30% recovery) for a fees payment of $60,000.00, as opposed to the lodestar approach addressed below (where the recovery would be approximately $107,500.00), the Court will see that Plaintiff's counsel is seeking less than the generally requested 1/3 fee amount and also much less than the lodestar amount, even without a multiplier.

Accordingly, the percentage amount requested is fair and reasonable and should be approved.

6

### III. UNDER THE LODESTAR APPROACH (OR CROSS-CHECK), A REASONABLE FEE WOULD CONSIST OF THE REASONABLE NUMBER OF HOURS SPENT TIMES THE REASONABLEHOURLY RATE CHARGED

Under the long-standing and seminal case of *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983), plaintiffs in fee shifting litigation are considered prevailing parties "if they succeed any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* (internal citation omitted). In this case, the Plaintiff has succeeded in obtaining overtime remedies. These were the very claims that have been at issue since the filing of the initial Complaint. Under those circumstances a fee award, even if under the lodestar approach, is mandatory. *Id.*

To determine the proper amount of the lodestar calculation the Court should begin by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433. A party seeking an award of such a fee must establish the reasonableness of the rate and the time. *Robinson v. City of Edmond,* 160 F.3d 1275, 1281 (10th Cir. 1988).

.

### A. Reasonable Hourly Rates

The reasonable hourly rate is reflected in the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Group Prop Mgmt., Inc.,* 295 F.3d 1065, 1078 (10th Cir. 2002); *Malloy v. Monahan,* 73 F.3d 1012, 1018 (10th Cir. 1996). Undersigned Class Counsel's billing rate for paid work and for contingency work (when reimbursed) is $525.00 per hour. Associates who worked within the supervision of undersigned counsel billed at rates of $175 per hour (Rachel Graves for 17.80 hours) and

$325 per hour (Heather Joyce for 6.80 hours and Adam Harrison for 1.60 hours)[2]. Those rates were all reasonable, as shown by the attached affidavits of Paul Greisen and verified statements of undersigned counsel.

Those rates are charged in cases where counsel charges by the hour for representation as well as in fee shifting statutory cases. Those rates were obtained through investigation into what similarly experienced counsel in the plaintiffs' employment and class action wage and hour practice are charging in the Denver, Colorado area, given the background, training and experience of Class Counsel. It is supported by the attached affidavit of third-party counsel, Paula Greisen, Ex. 1; a review of the Colorado Bar Association's Economic Survey, Ex. 2; rates awarded in other similar cases; and the resume of undersigned Class Counsel, Ex. 3, as well as the verified statements contained herein.

Class Counsel was not simply speculating when those rates for his associates as well as himself were set. Class Counsel has been recognized by the federal Bankruptcy Court in Colorado as an expert witness qualified to testify on matters concerning the appropriate hourly rates for Denver-area attorneys in the practice of employment litigation in the federal courts. In that role, undersigned counsel has testified in federal court under oath as to such matters, after being found by the court to be qualified to testify as an expert witness under Rule 702, Fed. R. Evid. based on his knowledge, skill, experience, training and education. *See In re DeLois Porter*, No. 03-28990-EEB, (Bankr. Colo. May 16, 2007) (minutes read into the record and order granting attorney's fees). ECF Nos. 88 and 89.

1.      **Third party counsel affidavit of Paula Greisen**

---

[2]      Because undersigned counsel will be out of the country on the final hearing date, Mr. Harrison, who is also counsel of record, will be appearing for the Plaintiff, and his additional time in preparing for that hearing and in attending that hearing are also *not* being included in the Plaintiff's attorney's fees calculation, which results in additional support for the requested fee.

Attached as Exhibit 1 is the Declaration of Paula Greisen. Ms. Greisen is a Denver, Colorado plaintiffs' employment attorney who has been practicing for over 25 years. She is the founding partner of the law firm of King & Greisen, LLP, a highly respected plaintiffs' employment, civil rights, and class action firm. Ms. Greisen has practiced in front of the Colorado federal district court and the Tenth Circuit for her entire career and has regularly litigated complex cases and class actions in both such courts, including a multi-thousand member class action pending for well over 20 years before the federal district court. *See Montez v. Romer, sub nom. Montez v. Hickenlooper,* No. 92–cv–00870–CMA, 2014 WL 4413221 (D.Colo. September 8, 2014) *1 ("More than twenty-two years ago, Colorado state prisoners initiated this class action lawsuit, alleging that state officials violated disabled prisoners' rights under the Americans with Disabilities Act."). In Ms. Geisen's considered opinion, set forth by Declaration dated of March 2018, and having directly observed undersigned counsel's practice for her entire career, Ms. Greisen states that Class Counsel's reasonable hourly rate should be charged at a minimum of $525 per hour.  She herself regularly bills and is paid at that rate.  Greisen Declaration attached as Exhibit 1.

## 2. Colorado Bar Association Economic Survey

The Colorado Bar Association ("CBA") has, from time-to-time, published an Economic Survey. The survey published in 2012 may be found on-line at

http://www.cobar.org/Portals/COBAR/Repository/Sections/Opinions/6-20-16/The%20Colorado%20Bar%20Association.pdf?ver=2016-06-21-092107-630&timestamp=1466522470472. A copy is attached for the Court's convenience as Exhibit 2. ("Econ. Survey 2012").

Licensed in October 1977, undersigned Class Counsel has been practicing in Colorado for some 40 years. Counsel has been the founding partner in three respected

Denver employment, civil rights, and now wage and hour, class action firms. Previous to that, Counsel served as the Legal Director of the American Civil Liberties Union's Colorado Chapter for 13 years, from 1983 to 1996. Counsel has also served as the Associate General Counsel at Qwest Communications (now CenturyLink) where he directed and managed the company's employment litigation department, nationwide. During his tenure at Qwest he took a leave of absence at the request of the Hon. Governor Bill Ritter to serve as the Interim Director of the Colorado Civil Rights Division.

Since leaving Qwest, undersigned counsel founded the firm of Sawaya & Miller, a Denver law firm that focuses its litigation on class action wage and hour cases for low income workers. The firm has over 20 attorneys. Under the 2012 Economic Survey of the Colorado Bar Association, Ex. 2 at 15, the 95th percentile hourly charge for such an attorney would be $491 per hour. That survey is now almost 6 years old.

**3.      Rates awarded in other wage related cases in Colorado, where Defendant did business and all Class Members worked including rates authorized for Class Counsel**

Two years ago, fees were awarded in the case of *Felix v. Thai Basil at Thornton, Inc.* No. 14-cv-02567-MSK-CBS, 2015 WL 2265177, at *3 (D. Colo. May 6, 2015). *Thai Basil* was an FLSA case and not a common fund case. It resulted in a settlement agreement favorable to the plaintiff class. Although the court did not state a specific hourly rate, the filings showed that the court approved an hourly rate of $495 for an attorney with 19 years of experience. *Id., cited in Nicholas v. Double J disposal, Inc.,* No. 14-cv-01158-PAB-GPG (D. Colo. Feb. 12, 2016), at *3, referencing order in *Thai Basil,* ECF Nos. 14-3, and 19).

During 2017 and 2018 Class Counsel's hourly rate has been set at $525 per hour. Multiple courts have approved that amount for Class Counsel in a wage and hour cases applying Denver billing rates.  A year ago Class Counsel was awarded that rate in this court in

a Rule 23 class (and collective) action wage and hour case. *Dominguez v. Wilson Roofing Division, LLC,* No. 16-cv-00177-JLK-MEH (D.Colo Feb. 23, 2017) (Courtroom Minutes granting Plaintiff's motion for fees awarding $525 per hour for undersigned counsel's work) (ECF No. 38). Likewise, in another federal case awarding Denver-based rates for successful attorney's work on another class (and collective action) undersigned counsel was very recently awarded $525 per hour for his work.  *Bowers v. Tension International, Inc.,* No. 4:16-cv-00562-FJG (WD MO December 15, 2017) (Order granting final approval of class action settlement and Plaintiff's motion for attorney's fees at $525 per hour rate) (ECF No. 58).

### 4.        Class counsel's resume and experience

In addition to the facts set forth above with respect to support for the $525 hourly rate requested by undersigned counsel, the Court is also presented with counsel's resume. Too long to serve any useful employment purpose, it ends with the founding of counsel's current firm some six years ago. Since that time Class Counsel has brought and prosecuted some dozen additional class action wage and hour and employment cases; the largest of which is brought on behalf of a purported class of over 33,000 employees (*Price v. Sprouts Farmers Market, Inc.*, No. 16-cv-00855-WJM-KLM). That case was transferred to the Arizona federal district court in the fall of 2016 as a multidistrict litigation case, and undersigned counsel subsequently was appointed by the court to serve as the national lead counsel in that litigation. *In re Sprouts Farmers Market, Inc., Employee Data Security Breach Litigation*, MDL No. 16-2731-PHX-DLR (ECF No. 20 at p.3). Class Counsel is also lead counsel in a wage and hour case currently pending before the Tenth Circuit which involves a purported class of over 15,000 alleged student employees (*Nesbitt v. FCHN, Inc.*, No. 17-cv-1084). Class Counsel's resume is attached as Exhibit 3.

What that resume and the other factors shown herein demonstrate is that undersigned counsel has the experience, the training, the knowledge and the expertise to command a rate at the highest percentile of the Econ. Survey 2012, as extrapolated to the present. Accordingly, undersigned counsel submits that a rate of $525 per hour is justified.

**B.     Reasonable Hours Spent**

Undersigned Class Counsel has determined the billing rates for his associate attorneys who have worked on the case during the two years period of time. His evaluation of their work has been gained by directly supervising their work product and laboring with each of them in the same office day-by-day over the course of that time has allowed the undersigned to establish a reasonable billing rate for each of those associates. To do that Class Counsel has talked with other management partners at similar plaintiffs' employment firms, reviewed the decisions in cases decided by the courts of both this Circuit and the Tenth Circuit concerning the reasonable billing rates of associate attorneys with similar experience and training; reviewed the Econ. Survey 2012 and all of its exhibits and tables relevant to such associates' practice; and most importantly, from working hand-in-hand with such associates undersigned counsel has been able to see the efficiency, skill and performance of each such attorney. Based on those factors, Class Counsel has billed the below described associates reflected in Ex. 4 at the requested rates.

Class Counsel appends the original billing records of Sawaya & Miller as Exhibit 4. The report is organized by timekeeper and billing date and has been reviewed by undersigned Class Counsel acting in his role as the firm's Billing Partner. Redundant, repetitious or otherwise improper billings which reasonably should not be charged to a paying client have been removed or modified. Those

billing records were accurately and contemporaneously billed and properly reflect the time spent on the specifically described legal tasks.

Based on the above factors, Class Counsel has billed the following associates reflected in Ex. 4 at the following rates:

1)      Rachel Graves (admitted to the Colorado Bar Nov. 2015; and previously admitted to the bar of New York for two years previously, and so Ms. Graves worked as an attorney licensed in another state who worked on this case from November 2015 until she left on leave at the end of January 2016) is billed at $175 per hour (her reasonable rate in the mean of the Econ. Survey of 2012 would be approximately $225 per hour);

2)      Heather Joyce (admitted to the Colorado Bar Oct 2009; and first worked at Jackson Kelly as an associate until she moved to Sawaya & Miller and started working on this case in May 2016) is billed at $325 per hour, a rate within her mean rate under the Econ. Survey of 2012.

3)      Adam Harrison (admitted to the Colorado Bar in 2016) was previously and since 2009 admitted to practice law in the State of Virginia, where he is still licensed. He has been practicing for the same time and under the same billing rate as Ms. Joyce at $325 per hour, a rate within his mean rate under the Econ. Survey of 2012.

Contained within Ex.4 is an accurate and complete statement of the time, costs and expenses of litigating this case (except for additional time spent subsequent to the filing date of this exhibit and except for the expenses of the Administrator that are set out in her Declaration and below in Section VI). The charges listed as "Expenses and Advances" are the actual charges paid to third parties for services rendered to the firm in this case and necessary and required for the litigation of the case. They include the filing fee ($400) and search fees paid to a private investigation firm to locate

clients and class members ($100). These costs are subsumed in the Settlement Agreement provision wherein Defendants agree to pay $12,000.00 for all costs, including all costs of administration, as well as litigation costs.

Sawaya & Miller does not charge for paralegal time expended by in-house staff for their work on cases. The firm only charges the actual amount paid to third-party contract paralegals when such assistance is needed beyond the firm's own resources. This case did not involve the hiring of outside paralegal assistance. The expense of in-house staff are absorbed by the firm. This amounts to a large savings for those billed in that they receive those services as part of the firm's overhead expenses and they are not passed on to the client or opposing party—or in this case deducted from the recovery as an expense.

In sum, as the Amended Settlement Agreement and Motion for Final Approval set out, Plaintiff's counsel is requesting a total of $60,000.00 in fees and $12,000.00 to pay for all costs, including $500.00 in out-of-pocket expenses incurred by the firm along with all Administration costs.

Using the above-described reasonable billing rates and hours for the attorneys who worked on this litigation would result in a total fee request of $107,482.50. *See* Exhibit 4 at p.5.

But as argued above, $60,000.00 should be awarded as set out in the proposed Amended Settlement Agreement. That amount is more than 40% less than would have been reasonably assessed under a lodestar approach, with no multiplier used, and 3.33% less than a 1/3 contingency or percentage award under the common fund approach.

## IV.    THE *JOHNSON* 12 FACTOR TEST SUPPORTS THE REQUESTED AWARD TO PLAINTIFF'S COUNSEL

As instructed by the above decisions, this Court also needs to examine the *Johnson* factors in determining a reasonable fee. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* 488 F.2d at 71719, *cited in Vaszlavik,* slip op. at 3. *See generally Lucas v. Kmart Corp.*, No. 99-01923, 2006 WL 2729260, at *5–7 (D. Colo. July 27, 2006) (used as a blueprint for the below analysis).

### A.    Time and labor required.

This case involved substantial time in the review of worker records (weekly pay records for 215 Class Members) and research and briefing over a year and a half period with respect to the difficult issue of the retroactivity of the controlling DOL regulation as it wound its way through the district and appellate courts. During the over 2 years of litigation Plaintiff's attorneys spent over 242 hours litigating the case.

### B.    Novelty and Difficulty of the Questions Presented by the Case.

Aside from having to deal with 215 Class Members, many of whom do not speak English, this case involved the novel and difficult issue involving the retroactivity of agency regulatory law that first was addressed by a Washington, DC district court interpretive decision that was later overturned on appeal.

  **C.**  **Skill Requisite to Perform the Legal Service Properly.**

  This case involved the novel and difficult issue of regulatory retroactivity which still has not been fully resolved by the courts. Additionally, the matter was complicated by the changing structure of the arrangement of claims, moving from what was initially litigated as a "hybrid" state and federal wage and hour class and collective action into an individual FLSA claim with a supplemental Rule 23 class action claim. Recognizing these complexities and adjusting litigation strategy to avoid bifurcation and what could have been years of delay before the award of a whole remedy for the Plaintiff class required a high degree of specialized skill in wage and hour law and an intimate knowledge and appreciation of the practice standards of the different trial court judges in the federal district court. *See Vaszlavik,* slip op. at 3. It also required a small-to-midsized firm to manage and master a large quantity of documents, information and multi-lingual clients.

  The result in this case, given the claims and the uncertainty of the law on retroactivity, is excellent. While the Class Members may be obtaining a "haircut" of around half of their theoretical maximum damages, there has always been the possibility that if litigated to the bitter end the Class Members would receive nothing.

  **D.**  **Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case.**

  Class actions such as this case necessarily require substantial work, not just because of the review of hundreds of workers' records and the briefing of difficult legal questions, but also because of the need to communicate and resolve the individualized questions from all of the Class Members who decide that they need person-to-person contact with Class Counsel and his office. That is particularly true here because all of the Plaintiff's work was done by Sawaya &

Miller; and while the firm may have 20 lawyers along with supporting staff, the wage and hour division where all the work was done consists of only 2 attorneys and 1 paralegal.

### E.     The Customary Fee.

The requested fee is reasonable under both the percentage of the fund or unenhanced lodestar approach. Class Counsel seeks less than 1/3 of the fund. *See* 4 Robert Newberg, *Newberg on Class Actions* § 14:6 at 551 (4th ed. 2002) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Under the enhanced lodestar approach, courts typically award multipliers of 2 to 3 times the lodestar. An award of that amount here would have set the fees at over the amount of the entire fund and would be grossly inappropriate. *See Vaszlavik,* slip op. at 5.

### F.     Whether the Fee Is Fixed or Contingent.

Class Counsel pursued this case based on a contingent fee agreement and thus would have recovered nothing if the Plaintiff had not prevailed. "Given the risk of non-recovery, this factor weighs heavily in favor of the requested fee." *Vaszlavik,* slip op. at 6.

### G.     Any Time Limitations Imposed by the Client or the Circumstances.

The size, magnitude and procedural posture of this case imposed meaningful time limitations on Class Counsel in this case. The time limitations were particularly significant given the prospect of a substantial delay resulting from the incomplete resolution of the retroactivity issue which consumed well over a year of the litigation and multiple rounds of briefing.

### H.     The Amount Involved and the Results Obtained.

Class Counsel recovered $200,000.00 on behalf of the Class as the gross common fund recovery. Given the significant risk that the Plaintiff and the Class would recover nothing, this result justifies the requested fee. *See Vaszlavik,* slip op. at 6.

       **I.**       **The Experience, Reputation and Ability of the Attorneys.**

The Class Counsel in this case includesthe lead attorney with a recognized reputation for employment and civil rights class actions, and who has led a private non-profit's and a state agency's legal enforcement organizations, and who also has been in charge of the legal employment litigation division of one of Colorado's largest private employers, where his main activity was in the defense of wage and hour class actions.

       **J.**       **The Undesirability of the Case.**

Given the risk of no recovery and the unsettled legal issue described above, this was not a desirable case to take. *See Vaszlavik,* slip op. at 7.

       **K.**       **The Nature and Length of the Professional Relationship with the Client.**

This factor is irrelevant in this case, but the Tenth Circuit has recognized that rarely are all 12 *Johnson* factors applicable in any one particular case. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 456 (10th Cir. 1988). That factor, or lack thereof, does not affect or impact the fees analysis. *See Lukas v. Kmart Corp., supra,* 2006 WL 2729260, at *10, n. 3 (citation omitted).

       **L.**       **Awards in Similar Cases.**

As set forth above, the amount of fees requested by Class Counsel is substantially less than is typically awarded under either the enhanced lodestar or percentage of the fund approach. *Id.* at *7.

       **V.**       ***CY PRES* AWARD**

To the extent surplus funds exist after payment of class member claims (for example, some class members may not be located and their checks may expire), the balance, by agreement of the parties, will be tendered to the *cy pres* recipients in equal shares. Those organizations are the Colorado Center of Law and Policy, and the Colorado Fiscal Institute. If any settlement check is not timely cashed within 60 calendar days of issuance, all unclaimed funds will revert to Defendants, who shall then promptly pay the unclaimed funds to the Colorado non-profit organization selected by the Court under the Settlement (the parties have approved the Colorado non-profit organizations referenced above as the recipients of such funds).  Amended Settlement Agreement at ¶ 12(c). ECF No. 62-1.

Such an award to non-profits whose missions and goals are consistent with the nature of the litigation is the normal and regular way to accommodate the payment of undistributed proceeds from a class action settlement. *See, e.g., Rhodes v. Olson Assocs, P.C.,* 308 F.R.D. 664, 666, n. 3 at 668 (D.Colo. 2015) (remaining funds after pro-rata distribution either paid to agreed-upon *cy pres* non-profits or by agreement to the Class Members). In this proposed Settlement the parties have chosen to have the Defendants pay any remaining funds to the Colorado non-profit organizations described in Exhibits 5 and 6. *See* Exhibits 5 and 6 which are the mission statements and goals of the Colorado Center on Law and Policy, and the Colorado Fiscal Institute, respectively. The terms of those exhibits are by this reference incorporated herein and are consistent with the subject matter of this litigation.

## VI.    THE ADMINISTRATOR'S FEES AND COSTS SHOULD BE APPROVED

Typical in class actions settlement is a provision requiring the settling defendants to fund a third party class administrator. *See, e.g., Rhodes, supra,* 308

F.R.D. at 666 (third party class administrator KCC Class Action Services will administer the settlement notice and distribution). Depending on the nature of the case and the terms of the settlement, those administrative expenses may be very high. *See, e.g., Barr v. Qwest Commc'ns Co., LLC*, 1:01-CV-00748-WYD, 2013 WL 141565, at *3 (D. Colo. Jan. 11, 2013) (Administrative costs—to be paid separately by the Settling Defendants— are estimated at an additional $926,000 for over 9,400 Class Members). *See also Whittington v. Taco Bell of Am., Inc.*, 10-cv-01884-KMT-MEH, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013) (Defendant Taco Bell pays $85,000.00 as administrative expense for processing of the settlement agreements and payments).

The court, in its discretion, defines the duties of the Administrator, subject to the court's equitable and Rule 23 powers. *See Horton v. Leading Edge Mktg. Inc.*, 04-CV-00212-PSF-CBS, 2007 WL 2472046, at *6 (D. Colo. Aug. 28, 2007) (Approving third party administrator with specified duties). Here, the Court laid out the duties of the Administrator in the Order Granting Preliminary Approval of the Amended Settlement Agreement. ECF No. 63.

Administrator Spradlin's Declaration, Exhibit 1 to the Joint Motion for Final Approval, along with its attachments, sets out her compliance with the referenced Order of Court. Even after the final approval hearing on March 12, 2018, Administrator Spradlin will have numerous duties to fulfill—including the drafting, sending and monitoring the settlement checks; tracking their return or delivery; working with Defendants and Class Counsel to assure that correct tax withholdings and payments are provided; and calculating and paying any and all further distributions to Class Members, the Defendants and or the *cy pres* recipients, as well as the drafting of a final report to the parties.

In this case lowest proposal from a third party administrator that was able to be obtained by Class Counsel was previously provided to the Court as an attachment to the Joint Motion for

Preliminary Approval of the Amended Settlement Agreement, ECF No. 62-2, and that proposal

was for $17,000.00. Administrator Spradlin's costs include all litigation expenses ($500.00), all

out-of-pocket expenses of administration, as well as all the charges for the administration itself,

as described in her Declaration, Exhibit 1 to Joint Motion for Final Approval of Class Action

Settlement filed contemporaneously herewith; and the statements of which exhibit and its

attachments are incorporated herein by this reference.

In sum, Administrator Spradlin's Declaration when read along with the attachments to

her Declaration (including but limited to her breakdown as to the exact duties exercised and

charges she associated with those duties) make it clear that her administration and charges

should be approved by this Court.

### VII.    CONCLUSION

For the above stated reasons the Court should approve Class Counsel's Motion for Fees,

Costs and Administration Expenses, ordering the payment of 30% of the Settlement Fund in fees

to Class Counsel ($60,000.00), along with reasonable costs of $12,000.00, agreed to by the

parties in the Settlement Agreement and which includes all costs of litigation and

administration. The damages award of $120,000.00 (which has already been paid to and

deposited into the Administrator's trust account) should be paid pro rata to the Class Members

as set out in the Amended Settlement Agreement (ECF No. 62-1). Additionally, as set out in

this Motion and the contemporaneously filed Motion for Final Approval of the Amended Class

Action Settlement Agreement by the agreement of the parties the named representative will be

additionally paid for her individual claim under the FLSA in the amount of $8,000.00, for a

grand total disbursement of $200,000.00.

Dated this 2nd day of March, 2018.


/s/David H. Miller
David H. Miller
SAWAYA & MILLER LAW FIRM
1600 Ogden Street
Tel: 303-839-1650 x 1090
Dmiller@sawayalaw.com

*Counsel for the Plaintiffs*


## VERIFICATION

I swear under penalty of perjury that statements made as matters of fact in this verified

motion are true to the best of my memory, knowledge and belief.

/s/ David H. Miller
David H. Miller
Plaintiff's Class Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March, 2018 I served the foregoing document
on Defendants by electronically filing with the Clerk of Court, using the CM/ECF system
which will send notification of such filing to counsel for the Defendants *via* e-mail.


/s/ Adam M. Harrison
Adam M. Harrison